## Richards *et al.* *versus* Elwell *et al.*

*Parol sale of lands.—Effect of lapse of time on proof of contract.—Laches not inferred from omission to apply for decree for specific perform ance.*

1. Where land was sold by parol, price paid, possession delivered, assessment for taxation changed, taxes paid, and control of the land by fixed boundaries held by the vendee and those claiming under him for upwards of forty years; the possessor is not to be held, in ejectment against him by the holder of the legal title, to the same strictness of proof of the contract, required in case of a recent bargain: the rule requiring the proof to bring the contracting parties face to face, to hear them make or repeat the bargain, and precisely state its terms, must, after that lapse of time, be relaxed.

2. Hence it was error to instruct the jury that the defendant must prove the contract, clearly and satisfactorily in all its parts, by witnesses who knew it, by having heard it made or repeated in presence of both parties; that it must exhibit location, boundaries, quantity, price, and manner of payment; that the description must be so accurate that a third person could find or run the lines; that there must be proof that possession was taken immediately or soon after the contract was made and in pursuance of it; and that the possession must have been actual, notorious, exclusive, and continuous, and accompanied by improvements.

3. It is not necessary that the defendant's possession should have been the continued, actual, resident, and hostile possession required of a trespasser to sustain a claim of title under the Statute of Limitations; but only that such a possession for such a lapse of time should be shown, as that the law would presume the release, satisfaction, or abandonment of the right or claim of him who had held it, to the party by whom any duty under it may have been due.

4. Such a presumption does arise in favour of a vendee in a parol contract and those claiming under him, after the lapse of forty years from its date; the payment of purchase-money coeval with it, and preceding possession delivered in pursuance therewith; the change in assessment for taxation from vendor to vendee, payment of taxes, and continued acts of ownership, evincing complete performance of the duty owed to the vendor, as such acknowledged and acquiesced in by him.

5. It was the duty of the court under the circumstances, to have left to the jury to find the facts upon all the evidence in the cause, and if satisfied of the fact of sale, identity of the land, extent of the purchase, payment of the price, and delivery of possession in pursuance of the contract, should have held the proof sufficient to support the defence.

6. The vendee was not guilty of *laches* in not compelling a decree for a specific performance of the contract.

ERROR to the Common Pleas of *Crawford county*,

This was an action of ejectment by Joel Elwell and Nancy his wife against William W. Richards and Benjamin Kysenseder, for about one hundred acres of land, in which there was judgment for plaintiffs. All the material facts of the case will be found in the opinion of this court.

*D. M. Farrelly* and *H. L. Richmond*, for plaintiffs in error.

*G. Church*, for defendants.

[Richards *et al. v.* Elwell *et al.*]

The opinion of the court was delivered, January 2d 1865, by

AGNEW, J.—In reading the testimony in this case, every unprejudiced mind must be convinced of the following facts, as proved with certainty, and leaving no doubt or hesitation in his mind, viz.: That in the year 1820, Daniel Dorrel's property being under execution, he procured the money to be raised by Asa Dunn, who paid it and took the sheriff's receipt in his own name, stating the writ upon which it was paid. That in consideration of this payment, and for the purpose of procuring the money, Daniel sold a part of his tract of land lying on the east side of a run. The weight of the evidence leads to the belief, it was all the land on the east side of the run, but no doubt exists it was at least the fifty acres for which special defence was taken by Richards. That in the same year Dunn put a tenant into possession, and afterwards retained possession through tenants put upon the land from time to time, until he sold to Edmondson the fifty acres in controversy. He had before sold to Stone, who went into possession and made some improvements, and then left his purchase. The chief improvements were made, however, by Edmondson. That immediately the assessment of the land for taxes was changed from Dorrel to Dunn. In 1820 Dorrel was rated for two hundred acres, and in 1821 for one hundred acres only, while Dunn became assessed for one hundred acres. That Dorrel lived on the remainder of the tract until he died, and after him his widow, and Mrs. Elwell, his devisee, under whom the plaintiffs below claimed.

When this case was here before, this court, through the late chief justice, said of it: "It seems to us there is evidence that there was such a sale, that the price was paid, possession delivered by the vendor, and the control of the land held by the vendee and those claiming under him, for about twenty-eight years before suit was brought. Of some of these elements the direct evidence is quite insufficient, but when corroborated by a long control of the land that cannot otherwise be accounted for, it becomes quite convincing. After so long a lapse of time, we know of no way of compensating Dunn and those claiming under him for the breach of the parol contract: and this consideration is quite influential in raising an equity in favour of the defendants."

This ejectment was brought in 1849, and tried the last time in 1862, and under the charge of the court a verdict was rendered for the plaintiffs. The result is that after a purchase of the land, and full payment of the purchase-money, together with a possession more than forty years old, the defendant must give up his land and improvements without remedy or hope of compensation; for Dorrel who sold it and received the benefit, by the payment

of the execution and release of his property, has been dead more than forty years.

How was this result accomplished? The answer is, by the stringency of the rulings of the court below under the Statute of Frauds and Perjuries; and this raises the only question in the case, whether the court laid down to the jury the proper rule to be applied to the facts. No complaint can be made against the charge, so far as it states the general rule under the statute, to be applied to purchases by parol. But it is alleged, and I think with truth, that the rule is too stringent as applied to the facts of this case, and that efflux of time must necessarily weaken the proof which a party should bring to the support of his title. Here a purchase of over forty years' standing was left to the jury under the instruction that the defendants "must prove the contract clearly and satisfactorily *in all its parts, by witnesses* who knew it *by having heard it made or repeated in the presence of both parties.* When proved it must have all the attributes of a good contract, *clearly exhibiting the location, boundaries, and quantity of land, the price to be paid, and manner of payment.* The land must be so described that a third person could take the description, go to the ground, find or run its lines. The evidence must then show that the vendee took possession *immediately* or *soon thereafter* in pursuance of said purchase, which possession must have been actual, *notorious, exclusive, and continuous,* accompanied by improvements."

This case is remarkable in this feature,—that two living witnesses were found after a lapse of forty-two years who were present at the time of the making of the contract. But what guaranty can there be, after this great length of time, for precision and correctness of memory? Indeed, how few could remember anything of an occurrence so ancient! We occasionally meet with men of remarkable tenacity of memory, who can repeat facts with great precision, but surely it is not in the general course of human experience, indeed it does not belong to human infirmity, after a lapse of forty years to be able to state all the parts of a contract "*clearly and satisfactorily,*" "*clearly exhibiting the location, boundaries, and quantity of land, the price to be paid, and manner of payment.*" To hold the witness to this rigid precision of recollection, is to bind the party to a measure of proof incompatible with experience, and inconsistent with the rule in all other cases of ancient transactions.

I do not now refer to the facts which a jury must be able to find in order to fix the identity of the land sold and price paid, and thus establish the purchase to their satisfaction, but to the kind of proof by which this is effected. The fact of sale being proved, its circumstances may often be reached with a certainty equal to that derived from the express testimony of a witness

[Richards *et al. v.* Elwell *et al.*]

who heard each particular defined.   One who for forty years has occupied by distinct possession, and claimed a tract with fixed boundaries, undergoing no change, and who has been assessed and paid the public taxes upon it for that time, while he from whom he bought was his adjoining neighbour, recognising his boundaries and possession by non-claim and silence, would hardly fail in convincing a jury, after the proof of a purchase from his neighbour and payment of all he claimed upon the land, that the tract thus bounded and occupied was the precise territory he purchased, notwithstanding that the witness failed in being able to state all the particulars with the precision required in a recent transaction.

If the rule which requires the proof to bring the parties face to face and to hear them make the bargain or repeat it, and to state all its terms with precision and satisfaction, is not to be relaxed after the lapse of forty years, when shall it be ?   After the lapse of fifty or sixty years it is not probable that any witness can be found above ground to state anything.   Shall we wait for that period before we begin to relax ?   In the ordinary course of human affairs, forty years are almost as likely to carry the proofs beyond the memory of living witnesses.   It is contrary to the presumptions raised in all other cases—presumptions which are used to cut off and destroy rights and titles founded upon records, deeds, wills, and the most solemn acts of men. Based upon a time much shorter than in this case, we have the presumptions of a deed, grant, release, payment, survey, abandonment, and the like.   Indeed all our statutes of limitation are founded on this principle, with this difference, that the presumption, which before was inconclusive, becomes absolute by the statute.

In Read *v.* Goodyear, 17 S. & R. 350, Judge Rogers, commenting on a tax sale, remarked : " That there must be some limit when courts of justice should apply the maxim *omnia præsumuntur rite acta,* will appear from the consideration that otherwise the longer the possession the weaker the title.   After the lapse of twenty-one years it would be almost impossible to prove a literal compliance with the act, and to exact a punctual adherence to the letter would be equivalent to saying that a sale for taxes should not be supported.   It would only be necessary to lie by till the evidence of the regularity of the sale was lost, when a recovery would be the necessary consequence.   Time would strengthen the title of the warrant-holder in the same proportion that it weakened the title of the vendee of the land. A title acquired by time alone, independently of the Act of Limitations, is regarded in law and equity."   He then cites authorities and refers to a number of instances, some less than twenty-one years, where defective rights have been cured by

[Richards *et al. v.* Elwell *et al.*]

time. 17 S. & R. 352. I refer also to the strong language of C. J. Black in Strimpfler *v.* Roberts, 6 Harris 298–9, upon the same subject, concluding with these words: "For such reasons as these it is, that civilized society has fixed a limited time within which all rights must be prosecuted. Where this is not done by positive enactment of legislature, the judiciary calls in the aid of presumption, and courts of equity, though not bound by the Statute of Limitations, close their doors against stale demands as sternly as the courts of law. Time will raise presumptions as conclusive for or against an original title, as it will in other cases." He then refers to a number of instances where such presumptions arise from lapse of time.

Webb *v.* Dean, 9 Harris 29, is another case in which time was allowed to operate against the legal rights of a party, and in which the present chief justice held that sixteen years, accompanied by persuasive circumstances, should be permitted to raise a presumption of payment. Brock *v.* Savage, 7 Casey 410, is also a case in which lapse of time was made efficacious against a legal title. Remarking both upon the character of the possession (bearing a strong analogy in this respect to the present case) and also upon the presumptions of law and equity, C. J. Lowrie said in that case: "The possession that is required in order to bar such claims as this, which with us is not more efficacious than a mortgage, is not the continued, actual, resident, and hostile possession of a trespasser that gives title in twenty-one years, but a possession according to the nature of the thing possessed, under a contract relation, and continued until the statute or a legal presumption bars the remedy on the contract, *or until equity or the law presumes that the duty owed by the person in possession has been released, satisfied, or abandoned.*"

Brock *v.* Savage was again in this court last winter, and the opinion then delivered (10 Wright 83), laid even greater stress upon the presumptions arising from lapse of time. It was a case of executory contract.

In the present case, the payment of the purchase-money, an undisputed fact, was coeval with the contract, and preceded the possession, leaving no duty to be performed by the vendee, and consequently no trust or fiduciary relation towards the vendor in regard to the possession. On what principle of sound reason or justice should a trespasser take the benefit of twenty-one years' possession to create a title in himself, and in this case no presumption be raised in favour of one who has done his whole duty, and received his possession at the hands of one who relinquished it voluntarily upon being paid the price of his land? If, after the lapse of forty years, he is held to the rigid proof required by the court below, then not only is his case exceptional to all others, but it is a hard one, indeed.

[Richards *et al. v.* Elwell *et al.*]

But it is said that the purchaser himself has been guilty of laches in not going into equity to compel specific performance at an early day, and therefore the rule of proof in recent cases is not to be relaxed.   This is susceptible of several answers.   In the first place, he owed the vendor no duty, he was let into possession, and paid the full price.   The only duty rested on the vendor to make the title which equity and morals demanded of him.   What sort of law or logic is it that would suffer him, after forty years, to say to the vendee, "True, you have paid me, you have the possession, and I ought long since to have made the title to you, but you did not go into court, and compel me to make it, and now I insist upon it you shall find the witnesses to confront me, and though their steps be tottering, and their memories frail or blank, compel them to speak of the transactions of that long gone-by period with the freshness of yesterday, or yield the land to me" ?   Such a demand would outrage sound reason, as well as our sense of justice.   But, again : neither law nor equity imputes laches to one in possession.   Even though he may be in default for non-payment, his possession protects him against immediate rescission, and he will be allowed time to pay. If his possession be wrongfully ousted or covinously obtained from him by his vendor, he can return into it without a previous tender of the unpaid purchase-money, and the vendor will be held to account for the rents and profits during his wrongful detention.   These principles will be found to be sustained by the following cases : Harris *v.* Bell, 10 S. & R. 39 ; Dixon *v.* Oliver, 5 Watts 519 ; Wykoff *v.* Wykoff, 3 W. & S. 481 ; Gregg *v.* Patterson, 9 Id. 197 ; D'Arras *v.* Keyser, 2 Casey 249.   In the last case Woodward, J., remarked : "The plaintiff was suing for possession which had been delivered to her in pursuance of a contract which she had fully performed.   She had not, indeed, obtained the legal title, but equity considers that done which ought to be done, and when she tendered the purchase-money and interest, equity would have compelled Keyser to convey the legal title.   Thenceforth she was no longer his tenant, but a purchaser in full possession, and in contemplation of law clothed with the legal title." * * * "Whilst a vendee who has never had possession must come into court prepared for full performance, a vendee to whom possession had been delivered in pursuance of the contract, who had tendered full performance, and then lost the possession without assent or agreement, may recover it without bringing the money into court.   This is the doctrine of many cases."

Had the possession been fiduciary, by reason of non-payment of purchase-money, or some unperformed duty, or had some right of the vendor remained to be protected, which in equity required the purchaser to be prompt, eager, and active, it might be differ-

[Richards *et al. v.* Elwell *et al.*]

ent.   But Dunn owed no duty, while his vendor for twenty-nine years before suit brought had owed him a conveyance; so long, indeed, that law and equity ought to presume a deed rather than to suffer him to assert his claim to recover at the expense of justice, and to the advantage of his own *laches*.

I think the charge of the court held the defendant below to too rigid a measure of proof.   There is a time when the rules of evidence must be relaxed.   We cannot summon witnesses from the grave, raké memory from its ashes, or give freshness and vigour to the dull and torpid brain.   Instead, therefore, of requiring the witnesses to speak in perfect accord, and to state the contract with complete detail and entire precision, and thus to make out all the requisites of a recent bargain, it seems to me the judge should have left the jury to find the facts upon all the evidence in the cause, and, if fully satisfied of the fact of sale, identity of the land and extent of the purchase, the payment of the price and delivery of possession in pursuance of the contract, he should have held the proof sufficient to support the defence.

Nor was the charge strictly accurate as to the possession; it is the fact of delivery of possession upon the contract, as an open act of part-performance, to which equity looks, and not to the subsequent continuation of it.   I know no decision requiring a vendee to stick to the possession with the same tenacity demanded to protect a title under the Statute of Limitations, yet this was the effect of the charge, that the possession must have been " actual, notorious, exclusive, and *continuous*."   The authorities referred to before hold the reverse, and that when a vendor interrupts the lawful possession of his vendee, he must not only turn out without demanding the purchase-money, but account for the profits.

Judgment reversed, and a *venire facias de novo* awarded.