# ROBERT WHITE v. SALLIE H. PATTERSON.

| 139 | 429 |
| 200 | 624 |

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF BEAVER COUNTY.

Argued October 10, 1890—Decided January 5, 1891.

1. The possession by a vendee under articles is notice to third persons that he is the equitable owner of the land contracted to be conveyed, and that his vendor holds the legal title in trust for him; and a party who, with such notice of the outstanding equity, takes a conveyance of the legal title from the vendor, succeeds to the rights and obligations of his grantor.
2. Laches will not be imputed to one in peaceable possession of land, for delay in resorting to a court of equity to establish his right to the legal title; wherefore, a vendee in possession will not be barred from maintaining a bill for a conveyance against his vendor's grantee, with notice, by a delay continuing for more than 33 years after defendant's acquisition of the legal title.
3. The Orphans' Court has no jurisdiction to decree specific performance of a contract for a sale of land against one who, with notice of the vendee's equity, received a conveyance of the legal title from the vendor prior to the latter's death; in such a case, the remedy of the equitable owner is by a bill filed in the Court of Common Pleas against the vendor's assignee.
4. When a vendor by articles, after receiving the purchase money in full and putting his vendee in possession, conveyed away minerals underlying the land, and died, the vendee could proceed in the Orphans' Court to obtain the title of which the vendor died seised, and also file a bill against the grantee of the minerals for conveyance of the title thereto.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 173 October Term 1890, Sup. Ct.; court below, No. 1 June Term 1890, C. P. in Equity.

On March 11, 1889, Robert White filed a bill in equity against Sallie H. Patterson, praying that the defendant be declared a naked trustee of the legal title to the "coals, ores, minerals and fire clays," in and under a certain tract of land containing one hundred acres, and that she be ordered to convey the same by a sufficient deed to the plaintiff. A demurrer to the bill was sustained in part by the court, WICKHAM, P. J.,

whereupon the plaintiff amended by introducing some additional averments. A second demurrer to the bill as amended having been overruled, the defendant filed an answer, and, issue having been joined, the cause was referred to *Mr. F. H. Agnew*, as examiner and master, who subsequently made a report finding the following facts:

John White, Sr., owned a tract of land in Beaver county containing 400 acres, and lived thereon with his family, among whom was his son, Robert White, the plaintiff, and another son, John White, Jr. The 100 acres mentioned in the bill formed a part of said tract of 400 acres.

An article of agreement was made January 31, 1843, between John White, Jr., and the plaintiff, whereby John White, Jr., agreed to sell and convey to the plaintiff all his interest in the aforesaid 100 acres, accruing at the death of their father, John White, Sr., the plaintiff then to give up to him his note for $1,000.

John White, Sr., died in 1846, seised, inter alia, of the said 100 acres, and devised the same in fee-simple to the said John White, Jr. In 1847, John White, Jr., thus holding the fee-simple of the 100 acres, after survey made delivered possession of the same to Robert White, the plaintiff, and the plaintiff gave up to him his said note for $1,000. The plaintiff, after his entry into possession in 1847, remained in peaceable, continuous, open, notorious, exclusive and adverse possession of the said 100 acres, making improvements thereon and paying all the taxes, which had been assessed wholly in his name.

John White, Jr., died in 1856, without having made a deed to the plaintiff for the 100 acres, and without providing for the same; but no demand for a deed was shown by plaintiff. Prior to his death, John White, Jr., with Esther, his wife, on November 2, 1854, made a deed, in fee-simple, for "all the coals, ores, minerals, clays and fire clays" under the said 100 acres, together with very extensive and somewhat unusual surface rights pertaining to the same, to James Patterson, which deed was recorded May 7, 1855, prior to the record of said agreement, which was not recorded until June 12, 1855.

The deed to James Patterson was to the prejudice of the plaintiff's rights and in violation of the agreement aforesaid. But, so far as James Patterson was concerned, no fraud was

alleged or shown. The only evidence as to this was the deed itself, recorded prior to the said agreement and admitted by the plaintiff to be the legal title and therefore with the presumption in its favor, containing evidence of valuable consideration and the receipt thereon of John White, Jr., for the purchase money, $325, to which may be added the oath of the defendant, claiming the adverse and the complete legal and equitable title. From all these facts and presumptions the master deemed himself justified in finding that James Patterson was, in fact, a bona-fide purchaser for value.

There was no evidence of actual notice to James Patterson of either the plaintiff's possession or title, or of John White, Jr.'s fraud, and his relation to the plaintiff as the trustee of his legal title. The plaintiff was in possession, at the time of the said deed to James Patterson.

James Patterson and Eliza, his wife, by deed dated June 23, 1855, and recorded July 24, 1867, conveyed his interest in the coals, ores, etc., to Sarah Harrison, wife of Wm. Harrison. Sarah Harrison was a bona-fide purchaser for value, and without any notice of the title of the plaintiff, or of the fraud of John White, Jr., or of the trust in him in the plaintiff's behalf, saving and except such notice as might be construed from the plaintiff's possession, of which she had no actual notice, and from the fact of the said agreement being on record at and prior to her deed.

Sarah Harrison, by will duly admitted to probate August 20, 1888, her death occurring March 10, 1888, devised her said interest in the coals, ores, etc., aforesaid, to Sallie H. Patterson, the defendant. The findings as to Sarah Harrison were true also as to the defendant, with the additional fact that the proceedings for specific performance at No. 12 March Term 1886, infra, existed at and prior to the devise aforesaid. In neither the defendant's nor Sarah Harrison's case was there any evidence of actual notice of any of these prior records.

By proceedings in the Orphans' Court at No. 12 March Term 1886, for specific performance of said agreement, W. H. Partington, administrator of the said John White, Jr., by decree of said court executed and delivered a sufficient deed, dated June 15, 1886, to the plaintiff, vesting in the plaintiff the legal estate in the 100 acres aforesaid, so far as it was possible for the

Master's Report.

same to be performed on the part of John White, Jr., after his said deed to James Patterson; and Esther White, widow of John White, Jr., gave a release of dower to the plaintiff, by deed dated January 5, 1886, and recorded June 16, 1886.

Upon the facts so found, the master reported his conclusions of law in substance as follows:

1. The possession of the plaintiff was constructive notice of his title to James Patterson, who therefore bought with notice thereof, and, as is shown by the facts found, it was the better title.

2. John White, Jr., was a naked trustee for the plaintiff, but as James Patterson was a bona-fide purchaser, without actual notice of either the possession or title of the plaintiff, of the fraud of John White, Jr., or of the trust in him on behalf of the plaintiff, said trust, being necessarily a constructive or resulting trust, can be fastened on James Patterson only by constructive notice arising out of the plaintiff's possession, which the master holds to be sufficient for that purpose.

3. The defendant and Sarah Harrison are in no better position, so far as constructive notice of the trust is concerned, than James Patterson; but, if the trust fails as to him, it must fail also as to the defendant, even though she had notice.

4. The court has jurisdiction of the case.

5. The proceedings for specific performance in the Orphans' Court are not conclusive on the plaintiff.

6. The plaintiff is entitled to relief, notwithstanding acquiescence, laches or delay for thirty-three years.

7. Sufficient privity between the defendant and John White, Jr., to justify the relief sought, has been shown, and the relation of trusteeship exists between the plaintiff and the defendant.

—Explaining that his conclusions of law as to the sufficiency of constructive notice from possession to impose a trust upon an innocent bona-fide purchaser for value, and as to the effect of laches upon such a trust, were based upon the rulings of the court in overruling the demurrer to the bill, and that these questions had not been squarely brought before the court in the argument of the demurrer, the master recommended that they be fully heard and considered by the court, and reported

in the alternative as to the decree to be entered, viz.: That, in case the court should reaffirm the points recommended for further hearing, a decree be made in accordance with the prayer of the bill; but, if the court should refuse said points, or any of them, that other relief be granted or the bill be dismissed, as might seem meet. The master stated his own views upon these subjects as follows:

The question of possession being constructive notice of the title, and of being notice of the trust, are quite distinct. That it is of the title, is good law: Hottenstein v. Lerch, 104 Pa. 455, and Rowe v. Ream, 105 Pa. 543; and equity following the law, it is properly so held in this case. But, such notice of title is in reality in derogation of the recording act and not a subject always agreed upon by courts. To hold that possession is notice, also, of a trust, is to go a step farther, and tends to weaken the effect and intention of the recording acts. That the law should cast a trust upon an innocent purchaser, who supposes he is getting a complete title, the record being all right, and pays his money therefor, simply because of laches in not noticing the possession of the land, seems straining the idea of privity which lies at the bottom of a trust. But it is held as late as in Brickell v. Earley, 115 Pa. 473, that as to realty a constructive or resulting trust may arise only in the case of fraud or the payment of the money of another. Such a rule serves to quiet title, but to hold as the plaintiff must ask in this case, is but to disturb title. But, more; the plaintiff was guilty of laches in not demanding the legal title from John White, Jr., for so long a time after 1847, and he was guilty of laches in not putting on record within reasonable time his article of agreement; and again guilty of laches in making no demand for some thirty-three years of James Patterson and his assigns to execute the trust. Does he come into a court of equity with clean hands, such that at his demand the law shall cast upon the defendant a trust because of her laches in buying without noticing his possession? It does not seem equity. But, supposing Patterson was affected by the trust, is not the plaintiff by all analogy barred from enforcing it after a lapse of thirty-three years? The plaintiff's true remedy would seem to be a bill quia timet: Bispham's Eq., § 575.

—Upon exceptions to the report of the master, the court, WICKHAM, P. J., filed an opinion in part as follows:

A careful examination of the evidence fails to reveal any error in the master's findings of fact, save so far as they relate to the matters complained of by the plaintiff in his exceptions.

In holding that James Patterson was shown by the evidence to have been a bona-fide purchaser, for value, the master erred, as will appear from the following reasons: First, the plaintiff's actual possession of the land bought by him from John White, Jr., was constructive notice of all his rights thereto and therein, and he who has either actual or constructive notice, is not, in law, regarded as a bona-fide purchaser, even though he pay full value: Garrard v. Railroad Co., 29 Pa. 154; McCray v. Clark, 82 Pa. 457. Second, there is nothing in the case, save the recital in the deed and the receipt attached thereto, to show the payment of the purchase money. These things, although sufficient as regards the vendor, are mere hearsay, so far as the plaintiff is concerned, and amount to nothing. [The court here cited and quoted from Lloyd v. Lynch, 28 Pa. 419, and Penna. Salt Mfg. Co. v. Neel, 54 Pa. 9, and continued:]

It is needless to cite further authorities. It will be observed, moreover, that the bill does not admit nor the answer assert, as a fact, that Mr. Patterson was a purchaser for value. . . . .

In view of something said by the defendant's counsel and also stated by the master in his report, it is perhaps necessary to consider more fully than was done in the former opinions, the nature of the trust imposed on John White, Jr., and his successors in title, by his contract with the plaintiff. It may be termed a trust by equitable construction in the absence of fraud: Hill on Trustees, 4th Am. ed., 272, § 171. "The vendor's legal estate is held by him on a naked trust for the vendee; this trust, impressed upon the land, follows it in the hands of the persons who may succeed to his legal title, his heirs and his grantees, who take with notice of the vendee's equitable right:" 1 Pomeroy's Eq. J., § 368. The case of Brickell v. Earley, 115 Pa. 473, cited in support of the theory that a constructive trust in land can arise only when title has been derived through fraud, or through purchase with another's money, contains that doctrine only in the syllabus, which grossly misrepresents the meaning of the opinion. All that the court

decided was, that, under the circumstances of the case, the defendant could not be held liable as a trustee of a resulting trust, unless it were shown that he was guilty of fraud or had bought with the plaintiff's money. It never was intended to deny the existence of what is perhaps the most common constructive trust now known to our law, namely, that arising from purchase of lands by articles of agreement.

Perhaps it is hardly necessary to say, although the circumstances of the case suggest the remark, that where one agrees to convey land for a valuable consideration, which land he does not then own, but afterwards acquires, he will hold it, when acquired, as a trustee for his vendee.

Notwithstanding the able and ingenious arguments of the defendant's counsel, that the plaintiff is precluded, by laches, from relief, the court cannot assent to this view. The plaintiff fully complied with his contract, took possession of the land, and held it undisturbed. No one ever attempted to mine or even prospect under the Patterson title. Indeed, so far as the evidence shows, we do not know that the plaintiff actually had knowledge of the deed to Mr. Patterson. But, even if he had, it would not matter. Under the circumstances, delay in bringing suit was not laches. The authorities cited on this point by the defendant's counsel, apply to an entirely different class of cases. This case is governed by the rule laid down by Mr. Justice AGNEW, in Richards v. Elwell, 48 Pa. 361. In the words of that decision, " Neither law nor equity impute laches to one in possession. . . . . Had the possession been fiduciary, by reason of the non-payment of purchase money, or some unperformed duty; or, had some right of the vendor remained to be protected, which, in equity, required the purchaser to be prompt, eager and active, it might be different. But Dunn owed no duty, while his vendor, for twenty-nine years before suit brought, had owed him a conveyance." This decision is also important on the question as to the degree of proof required on the part of the vendee, in a case like the one under consideration. In Du Bois v. Baum, 40 Pa. 537, Mr. Justice STRONG says: " His," the purchaser's " possession would have been constant action under the contract."

Some stress is laid by defendant's counsel on the alleged severance of the minerals from the surface of the land, by the

Opinion of Court below.

deed of John White, Jr., to James Patterson.   As John White, Jr., had long before this sold the land, minerals and all, to the plaintiff, who had paid therefor and was in possession, he, John, while he might convey the naked title to the minerals, certainly could make no severance that would injuriously affect the real owner's right.

A few words may be added to what was said in the former opinion on the question of jurisdiction,* as it is still contended by the defendant's counsel that the plaintiff's remedy, if he has any, must be sought in the Orphans' Court.   John White, Jr., before his death, parted with both the legal and equitable titles to the minerals in controversy.   The act of February 24, 1834, § 15, gives the Orphans' Court jurisdiction only where the decedent dies " seised or possessed " of the real estate he contracted to convey.   On this point, comment is made as follows, in Scott on the Intestate Laws, 1st ed., 434: " The second condition, necessary to support a petition for a decree under the statute, that the vendor shall have died seised or possessed of

---

* In a former opinion, the court, discussing an objection, raised by demurrer, to the effect that the plaintiff was precluded from further action in equity by the proceedings in the Orphans' Court for specific performance of the contract with John White, Jr., recited in the bill, the court said:

Turning now to the defendant's objection, that the plaintiff is in the wrong court, I cannot agree that it is well founded.   The plaintiff, being in possession, certainly cannot proceed by action of ejectment in the Common Pleas.   The jurisdiction of the Orphans' Court does not attach for two reasons, both of which will appear by reference to § 15, act of February 24, 1834, P. L. 75: 1. John White, when he died, was neither actually nor constructively seized or possessed of the real estate in controversy.   He had parted with both the legal and equitable title.   He had neither possession nor right of possession.   2. The statute, conferring jurisdiction on the Orphans' Court, provides no machinery for enforcing in that tribunal, at the purchaser's instance, a decedent's contract for the sale of realty, where he conveys, before his decease, the legal title to a third person.   There is no authority for citing any one claiming the legal title, under or through the decedent, save his executors, administrators, heirs or devisees; and without notice, no decree would be binding on a party interested.   The jurisdiction of the Orphans' Court, where it exists, is, as the defendant's counsel suggest in their brief, usually exclusive, but it does not exist in the present case.   The plaintiff is entitled to be heard in some court, and I know of none, save this, the door whereof is open to him.

Opinion of the Court.

the estate sold, places the act in apparent antagonism to a general custom of the country, and is irreconcilable with the tenor of the sixteenth century. But, to reconcile what should never have stood apart, the Supreme Court has emphatically held that the language of the statute must be satisfied by a legal or constructive seisin." I have no knowledge that any court has ever gone further than this, in extending the operation of the statute. Would not Robert White, with the knowledge he now possesses, be guilty of something like perjury, if he were to present in the Orphans' Court a petition, duly sworn to, alleging that John White, Jr., died either actually or constructively seised of the minerals in dispute?

The exceptions need not be further considered.

—The court thereupon entered a final decree, [adjudging the defendant to be a naked trustee for the plaintiff of the legal title to the coals, etc., mentioned in the bill,] 9 and [ordering and decreeing that she convey the same to the plaintiff within twenty days, and that she pay the costs.] 10

Thereupon the defendant took this appeal, specifying, inter alia, that the court erred:

2. In not finding that the plaintiff's possession did not extend to the coals, etc., in and under his land.

3. In overruling the master's finding that James Patterson, Sarah Harrison, and the defendant were bona fide purchasers for value.

5. In holding that a court of equity had jurisdiction of this case.

6. In not holding the plaintiff concluded by the proceedings in the Orphans' Court.

7. In not holding the plaintiff barred by laches and delay.

9, 10. In decreeing as set forth in [ ] 9 10

*Mr. William Scott* and *Mr. W. H. S. Thompson* (with them *Mr. J. R. Harrah, Mr. Martin, Mr. John Dalzell* and *Mr. George B. Gordon*), for the appellant.

*Mr. David S. Naugle* and *Mr. E. B. Daugherty* (with them *Mr. Louis E. Grim*), for the appellee.

OPINION, MR. JUSTICE McCOLLUM:

We think this case was correctly decided in the court below.

The appellee's possession of the land described in the bill, was notice to the appellant and the parties under whom she claims, that he was the equitable owner of it, and that his vendor held the legal title to it in trust for him: Hottenstein v. Lerch, 104 Pa. 455; Rowe v. Ream, 105 Pa. 543. It is also well settled that a party who takes a conveyance from the trustee of the legal title, with knowledge of the outstanding equity, succeeds to the rights and obligations of his grantor: Hill on Trustees, § 171; Pomeroy's Eq. J., § 368; Brightly's Eq. J., § 243; Kerr v. Day, 14 Pa. 112.

The jurisdiction of the Orphans' Court to decree specific performance of a contract for the sale of real estate in this commonwealth, is confined to cases in which the vendor died seised or possessed of such real estate, without having made any sufficient provision for the performance of his contract: § 15, act of February 24, 1834, P. L. 75. It does not extend to lands which he has conveyed to another, and in which, at the time of his death, he has neither a legal nor an equitable estate. In such case, the living holder of the legal title is the trustee of it for the equitable owner, and to him the latter must look for a conveyance in consummation of the contract. If the trustee decline to execute a deed when requested, the Orphans' Court cannot intervene to compel him to do so. The fact that his grantor is dead does not subject him to its process. The only remedy of the equitable owner in possession is a bill for a conveyance of the title which is unlawfully withheld from him, and the proceeding is in the Court of Common Pleas.

The objection that the equitable owner is precluded by laches from obtaining the relief he seeks is not well taken. "Laches will not be imputed to one in peaceable possession of land, for delay in resorting to a court of equity to establish his right to the legal title. The possession is notice to all, of the possessor's equitable rights, and he need only assert them when he may find occasion to do so:" 12 Am. & E. Encyc. of Law, 606, and cases cited; Du Bois v. Baum, 46 Pa. 537; Richards v. Elwell, 48 Pa. 361; Harris v. Harris, 70 Pa. 170.

The appellant has the naked legal title to the minerals; the appellee is in the possession of and has a complete equitable title to the land, including the minerals. The latter was compelled to resort to the Orphans' Court to obtain the title of

which his vendor died seised, and to the present action for the title which the appellant holds as his trustee. While the act of his vendor, in parting with the legal title to the minerals, made two suits necessary for the recovery of the full legal title held in trust for him, it did not destroy his right thereto, or leave him without remedy.

Decree affirmed, and appeal dismissed, at the costs of the appellant.