503 A.2d 427

**Carl CIMINA and Elizabeth Cimina, His Wife, Appellants,**

v.

**Tony BRONICH.**

**Tony BRONICH**

v.

**Carl CIMINA and Elizabeth Cimina, His Wife, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1984.

Filed Dec. 6, 1985.

Reargument Denied Jan. 28, 1986.

400

Richard DiSalle, Pittsburgh, for appellants.

Donald J. McCue, Connellsville, for appellee.

Before BROSKY, ROWLEY and JOHNSON, JJ.

JOHNSON, Judge:

Carl and Elizabeth Cimina [hereinafter "the lessors"], appeal from the order of the trial court which: 1) dismissed the lessors' action in ejectment against their tenant, Tony Bronich [hereinafter "the tenant"], and 2) granted the tenant's prayer for specific performance of an option to purchase, contained in the lease. For the reasons set forth below, we affirm dismissal of the ejectment action, but reverse the granting of specific performance.

On September 15, 1970, a two-year lease agreement, with right of renewal for additional yearly terms, was entered into between the lessors and the tenant. The lease provided that the tenant was to pay the real estate taxes on the land leased to him. The relevant provision of the lease read:

7. During the term of this lease, Lessee will pay all real estate taxes levied and assessed against the subject premises, whether statements therefor are sent to Lessors or Lessee. If the real estate taxes on the leased premises

are combined with real estate taxes on other property now owned by Lessors, then Lessee will pay only those taxes attributable to the leased premises and any improvements which may hereafter be erected thereon. The lease also included an option to purchase, which could be exercised by the tenant at any time during either the original or the renewal terms.

For eleven years, from 1970 to June of 1981, the real estate taxes were paid by Elizabeth Cimina. Although she was a signatory to the lease, Mrs. Cimina testified that she was unaware of the tenant's responsibility to pay his share of the taxes. The tenant, on the other hand, contended that he asked the lessors at least once a year if he owed anything for taxes, but that the lessors always said "no". The trial court found that the tenant never refused to pay the taxes and stood ready to perform, but was never notified of his share of the taxes.

On June 18, 1981, Carl Cimina sent a letter to the tenant, which read *in toto:*

Request your payment of all monies due me through March 14, 1981.

On August 7, 1981, the tenant received from the lessors a Notice to Quit, ordering him to vacate the premises because of the allegedly breached provisions of the lease. On August 24, 1981, the tenant notified lessors, in writing, of his intention to exercise the option to purchase the property. The lessors then filed their confession of judgment in ejectment. The tenant filed a petition to open confessed judgment and, by a separate petition, sought specific performance of the option to purchase. These actions were consolidated for non-jury trial. The trial court ruled in the tenant's favor on both actions.

## I.

The lessors first argue that the trial court erred in finding that the tenant's failure to pay real estate taxes was not a material breach of the lease as would warrant a forfeiture. We find no such error.

■ Equity does not favor forfeiture and courts greatly hesitate to enforce one, especially when the contract has been carried out or its literal fulfillment has been prevented by oversight or uncontrollable circumstances. *Barraclough v. Atlantic Refining Company*, 230 Pa.Super. 276, 326 A.2d 477 (1974). "When a party has honestly and faithfully performed all material elements of its obligation under a contract, but has failed to fulfill certain technical obligations, causing no serious detriment to the injured party, it would be odious and inequitable to compel forfeiture of the entire contract." *Id.*, 230 Pa.Superior Ct. at 282, 326 A.2d at 480.

■ The test for determining the materiality of a breach includes consideration of the following elements:

(a) the extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (b) the extent to which the injured party may be adequately compensated for damages for lack of complete performance; (c) the extent to which the party failing to perform has already partly performed or made preparation for performance; (d) the greater or less hardship on the party failing to perform in terminating the contract; (e) the wilful neglect or innocent behavior of the party failing to perform.

*Jennings v. League of Civic Organizations of Erie County*, 180 Pa.Super. 398, 403, 119 A.2d 608, 611 (1956) (citations omitted). When this test is applied to the instant case, it is apparent that the trial court was correct in its finding of a non-material breach. The lessors will have obtained the anticipated substantial benefit when the tenant reimburses them for the taxes; payment of the taxes will adequately compensate the lessors; also, as the trial court found, the tenant has in all other ways complied with the terms of the lease; it would be a great hardship for the tenant to be compelled to move his established business, mid-term, after eleven years in the same locale; lastly, the tenant's breach was not willful. In consideration of all of the above, we affirm the trial court's opening of the con-

fessed judgment in ejectment on the grounds that the breach was not of such magnitude as to require a forfeiture. As the supreme court has observed,

> From the strict *legal* standpoint the creditor is entitled to enforce the forfeiture according to the terms of the contract, but *equity*, or a court administering equitable principles under legal forms, will not permit him to do so if by lulling the debtor into a false sense of security he has led him into a default which otherwise the debtor might have avoided.... The relief is not against the obligation but against the forfeiture, on the ground of surprise....

*Warren Tank Car Company v. Dodson*, 330 Pa. 281, 286–87, 199 A. 139, 142 (1938) (emphasis in original). *See also Bedillion v. W.A. Wilson Stave Company, Inc.*, 271 Pa.Super. 292, 413 A.2d 411 (1979).

## II.

The lessors next argue that the trial court erred in specifically enforcing the option to purchase contained in the lease. The trial court gave two reasons in support of its decision. First, the court held that because the tenant's breach did not warrant a forfeiture, there was no impediment to the tenant's exercise of the purchase option. However, the court seemingly overlooked the fact that in the instant case the tenant did not attempt to exercise the option until after the lessors had taken steps to terminate the lease because of the tenant's breach.

An option to purchase contained in a lease -is a continuing obligation of the lessor which, if no time for its exercise is otherwise prescribed, the lessee may accept at any time within the period of the tenancy. *Cities Service Oil Company v. Haller*, 393 Pa. 26, 142 A.2d 163 (1958); *Detwiler v. Capone*, 357 Pa. 495, 55 A.2d 380 (1947). The within option clause states "that lessee shall have the option at any time during the original term of this lease or any renewal thereof to purchase the leased premises...." It is clear that the option was to exist only so long as the

lease existed. In the instant case, the tenant was in default and the lessors had sent a notice to quit. The court sitting in equity, however, intervened and properly exercised its discretion, ruling against forfeiture in consideration of the particular facts of the case. Nevertheless, this does not mean that the court was required to specifically enforce the option to purchase.

■ Specific performance is an equitable remedy and, as such, is not available as a matter of course but only in unique situations. *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979). Thus, while the courts of equity have the power to grant specific performance, the exercise of the power is discretionary—a matter of grace, not of right. *Payne v. Clark,* 409 Pa. 557, 187 A.2d 769 (1963). Where hardship or injustice will result to either of the parties, specific performance will be withheld. *Barr v. Deiter,* 190 Pa.Super. 454, 154 A.2d 290 (1959). Specific performance should only be granted where (1) the facts clearly establish the plaintiff's right thereto, (2) no adequate remedy at law exists, and (3) the chancellor believes that justice requires it. *Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d 1383 (1981).

■ Here we cannot find that the facts clearly establish the tenant's right to secure specific performance, nor do we believe that justice requires the invocation of this equitable remedy on these facts. It was not until the tenant had been notified of his breach of the lease, and received the notice to quit, that he attempted to exercise the option to purchase the leasehold property. Although the complaint upon which the tenant seeks to secure specific performance alleges that the tenant has been in compliance with all terms of the lease at all times following execution of the lease, the trial judge found as a fact that the tenant had not paid any of the taxes as per the lease agreement.

We are thus faced with a situation where a breach has clearly occurred, which is not sufficiently weighty to effectuate a forfeiture. Does it follow, therefore, that specific

performance must flow on behalf of the breaching party? We think not. Even though the failure to pay the taxes might be said to be insufficient to mandate a forfeiture, the tenant still must demonstrate a clear right to specific performance before this separate, distinct remedy may be invoked by a court.

Based upon the trial court's findings that the tenant had not complied with all the terms of the agreement, we must conclude that the averments set forth in the complaint were not proved, and the facts as found by the trial judge would not establish the tenant's right to specific performance.

The trial court, however, stated as an alternate rationale that, even if the tenant's breach could be said to be material, the option could still be exercised because an option to purchase has been characterized as an independent clause by our courts. *See, e.g., Cerbo v. Carabello*, 376 Pa. 571, 103 A.2d 908 (1954); *Pettit v. Tourison*, 283 Pa. 529, 129 A. 587 (1925); *Signor v. Keystone Consistory, A.A.S.R.*, 277 Pa. 504, 121 A. 320 (1923). While our courts have termed an option to purchase as an "independent clause," an examination of the cases in context shows that the court was holding only that option clauses are not automatically extended by further renewal terms of the lease, unless explicitly provided. In the present case, even though the lease contained an express provision allowing for exercise of the option during the renewal term, the right to secure specific performance of the option existed only so long as the tenant performed all of his obligations under the lease. As we stated before, we do not find the facts of the instant case to be such as would clearly establish the lessee's right to specific performance.

### III.

The lessors make two other arguments, both of which challenge the findings of fact of the trial court. The lessors contend that the court erred in finding that the tenant did not breach the lease by violating the zoning ordinances and by not keeping the property in good repair. A chancellor's

findings of fact, when approved by the court *en banc,* have the force and effect of a jury verdict and will not be disturbed on appeal if supported by adequate evidence. *Bedillion v. W.A. Wilson Stave Co., Inc., supra.* We find no reason to overturn the trial court's findings of fact that the tenant was in compliance with all of the other terms of the lease.

Accordingly, we affirm the trial court's dismissal of the lessors' action in ejectment. We reverse as to the trial court's granting of the tenant's action for specific performance.