## The Oil Creek Railroad Company *versus* The Atlantic and Great Western Railroad Company.

1. A bill for special enforcement of a contract is an appeal to the chancellor's conscience, on which he exercises a sound discretion, under all the circumstances for the most part untrammelled by rule or precedent.

2. He will not interfere if the bargain is hard or unconscionable, or the terms unequal, or the complainant is seeking an undue advantage.

3. Equity will not generally relieve against a forfeiture, but never aids in enforcing one, especially when the contract has been substantially carried out, but its literal fulfilment prevented by uncontrollable circumstances.

January 7th 1868.　Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.　STRONG, J., at Nisi Prius.

Appeal from Nisi Prius.　In Equity.

This was a proceeding in equity, commenced in the Supreme Court, Eastern District, No. 41, to January Term 1865, by the Oil Creek Railroad Company against The Atlantic and Great Western Railroad Company of Pennsylvania.

The bill avers:—

I. The incorporation of the plaintiff under an Act of Assembly of April 1860, with power, amongst others, to build a railroad from a point on the Sunbury and Erie Railroad, near Garland Station, Warren county, to Oil City, in Venango county, and thence to Franklin, in the same county.

II. The incorporation of the Meadville Railroad Company under an Act of May 20th 1857, and the change of its name by Act of April 15th 1865 to the Atlantic and Great Western Railroad Company of Pennsylvania, the defendants in this case, and the vesting of all rights of the Meadville Railroad Company in the defendants.

III. That the plaintiffs and defendants entered into a contract on the 14th of January 1864, by which the plaintiffs granted to the defendants the right to construct a railroad from Oil City to Franklin, under the plaintiffs' charter, and use and work it on the following terms:—

1. The defendants to pay all expenses of engineering and damages of every kind, keep up the fences on the line, and indemnify the plaintiffs against costs, &c.

7 P. F. SMITH—5

2. The defendants, at their own expense, to construct in a workmanlike manner a railroad from Oil City to Franklin, to be commenced within thirty days and completed on or before January 1st 1865.

3. To aid the raising of money for these purposes, the plaintiffs to issue to the defendants first mortgage-bonds secured on their road to the amount of $15,000 per mile, the defendants assuming the payment of the principal and interest as they should respectively become due.

4. On the completion and equipment of the road, the plaintiffs to lease it to the defendants at one dollar per annum for ninety-nine years; the defendants to have the right to fix the charges for travel and freight, but never so low as to enable them to deliver oil at Corry, &c., by other routes, at less than the plaintiffs' charge, nor discriminate, by reduced charges from Corry, against oil delivered there for the western market.

5. The defendants to keep an accurate account of receipts, &c., and to pay the state and United States government taxes on that part of the road.

6. The defendants to indemnify the plaintiffs against claims for damages of every kind arising on that part of the road.

7. "A violation of or failure to perform any of the stipulations of this contract to be performed and kept on the part of the [defendants] to operate as a forfeiture of the lease, and the [plaintiffs] might at once take possession of, and use and occupy the road, with all its fixtures and appertenances, as fully and completely as though it had been constructed by itself, and without any liability over to the [defendants]."

IV. That defendants, under the contract, commenced and prosecuted a railroad from Oil City to Franklin, but did not complete it on or before January 1st 1865, and have not yet completed it, and therefore the plaintiffs are entitled to put an end to the lease and take possession of the road, fixtures, &c., and use them, &c.

V. That the board of directors of the plaintiffs, on the 3d of January 1865, resolved that the lease should be regarded as forfeited and at an end; that the company (plaintiffs) take possession of the road, fixtures, &c., and occupy and use them as provided in the contract and lease; that the president take measures to carry the resolution into effect and to complete the road; and that he give notice hereof to the defendants.

VI. That notice of the resolution was given to the directors and other officers of the defendants, and that the plaintiffs took possession of the unfinished portion of the roadway, are still in possession of it, and are about forthwith to complete and bring it into public use.

VII. That the plaintiffs demanded and attempted to take pos-

[O. C. Railroad Co. *v.* A. and G. W. Railroad Co.]

session of the completed part of road; that the possession was refused, &c.

VIII. That the defendants pretend, notwithstanding the premises, that they are entitled to hold and use the road for 99 years.

IX. That by reason of the non-completion of the road within the time limited, the plaintiffs are entitled to be protected in the possession of that part of the roadway which they have, and to take possession of the remainder, and enjoy the road free from all interests of the defendants, paying them whatever may be equitably due for expenses of construction before January 2d 1865, which the plaintiffs declared themselves ready and willing to pay.

X. That damages for the breach of the contract cannot be accurately ascertained; that collisions will occur between the persons employed by the parties respectively; litigation will ensue as to the rghts of the parties; and the plaintiffs are without remedy, unless from a court of equity.

The prayer was for a decree, that the plaintiffs had a right to declare the lease at an end, re-enter, &c.; that they are entitled to the aid of the court, to protect them in the possession of the portion of roadway of which they have taken possession, and of the whole; to quiet their title, and to prevent the defendants from working or using the road; that an account be taken of the amount expended by the defendants, and that upon the payment of the sum found due, the contract may be delivered up to be cancelled; for an injunction restraining defendants from interfering with plaintiffs'· possession; from retaining any portion of the roadway; from preventing plaintiffs from taking possession of the road, fixtures, &c.; from working or using the same, and from claiming any interest therein, &c.; and for general relief, &c.

The answer admits the allegations in the first and second paragraphs of the bill, and avers that the authority to plaintiffs to construct a railroad from Oil City to Franklin, was repealed by an act passed January 29th 1862; admits the execution of the contract, but denies the commencement of the road under it; avers, that it was commenced prior to the contract as an extension of another road authorized by the defendants' act of incorporation; that they have steadily prosecuted the road to completion, but admits that it was not completed on the 1st day of January 1865; denies that the plaintiffs are therefore entitled to put an end to the lease, &c. It avers, that plaintiffs have not built a railroad from Garland station, &c., to Oil City, or near it; that although the defendants commenced the road and progressed towards its completion a sufficient time before the 1st of January 1865 to have finished it, if the plaintiffs had issued their bonds according to the contract, yet the plaintiffs have refused, and still refuse to

issue the bonds; admits the notice of the resolutions of plaintiffs' board of directors; denies that the plaintiffs took or had lawful possession of the road, or are in such possession, unless by artifice or fraud; avers, that defendants retain the possession, have always refused to surrender it to the plaintiffs, and design to retain it and operate the road during the whole term of their lease, and to comply with all its obligations, &c.

The plaintiffs filed a general replication, and testimony was taken by examiners.

The plaintiffs' witnesses testified that, on the 1st of January 1865, the track was laid within about 2½ miles of Oil City; the road was graded to within about 350 feet of Oil City; but there were no ties nor iron on that part of the road, and it was otherwise imperfect. Some of the work had been done when there was much snow on the road. The road in its condition on January 1st 1865, could have been finished with diligence in a month—or it might have taken two in that season of the year: at the rate the defendants had been working on the road previously to that date it would have taken three months. The distance between Franklin and Oil City is seven miles. The road was put into operation early in the spring of 1865, and has been in operation ever since.

The defendants' testimony was, that the road had been graded to Oil City on January 1st 1865, all the masonry done and track laid to a point about two miles below Oil City; that there was much delay in consequence of interference by the landholders along the route; that the defendants have kept and operated the road after January 1st 1865; twenty men could have finished the road to Oil City in one week after January 1st 1865; the work had progressed up to that time as rapidly as it could from the nature of the work; the respondents had paid large sums of money for right of way; the plaintiffs had not delivered bonds when demanded by defendants.

There was other testimony on both sides which, in the view taken of the case by the judge at Nisi Prius, and in the opinion of the Supreme Court, it does not appear important to notice.

The following opinion was delivered at Nisi Prius by

AGNEW, J.—" On hearing the agreement read at the argument, I thought there might be a question upon the construction of the seventh section, but not having it before me for careful study, I supposed there might be nothing in the conjecture.

" Subsequent examination convinces me this question stands at the very foundation of the case; and without saying my impressions are conclusive, as the case is yet to be heard, I am compelled to decide, there is so much doubt of the plaintiffs' right, the special injunction must be refused. This refusal involves no hardship as there is no impending danger. If the defendants go on to finish the road during the pendency of this proceeding they

[O. C. Railroad Co. v. A. and G. W. Railroad Co.]

do so at their risk, while all the advantage will be reaped by the plaintiffs if they finally succeed.

"I will state the impressions made upon me by a careful study of the writing. It plainly has two purposes and divides itself into two corresponding parts. The first purpose is for the construction and equipment of the railroad; the second for its subsequent use. The division is into a contract for construction and a lease for the use. This is evidenced by the title, the arrangement and the provisions. It is entitled, 'A contract *and* lease entered into this 14th day of January 1864.'

"The first three sections relate to the construction, constituting the first division; the last four relate to the lease, being the second. The first division provides wholly for the construction, equipment and expenses of building and equipping, including engineering and damages. The second division relates exclusively to the lease or use of the road after it shall have been constructed and equipped; and the relations between the parties during the existence of the lease, and means of determining the lease in case of failure of the lessee to conform to the contract. This being the arrangement and division of the agreement, the forfeiture provided for in the seventh section applies only to the lease, and not to the covenant in the second section.

"An examination of the provisions and the reasons therefor will exhibit this more clearly. The second section divides itself into two provisions. The first for the construction, grading and ironing of the railroad or road-bed, which is to be completed by the 1st day of January 1865. The second for the construction of the station-houses, &c., necessary to the convenient use of the road, and for the motive power, cars, &c., necessary to equip the road, as to which no time was fixed. A covenant was thus taken for completing the road-bed and ironing of the road to prevent dilatory execution, but it was supposed, this being done, the defendants' interest would lead them to fit up and equip the road for use, for the lease was not to begin until equipment had taken place.

"The fourth section begins the lease which it expressly provides shall take place *when* the road is *so* constructed and equipped. Thus completion is the consideration and the initiation of the lease. If construction be incomplete or abandoned, no lease comes into existence; while a forfeiture therefore of the *lease* implies that the contract for construction and equipment has been fulfilled. Then when we reach the seventh section we find it not only in order of arrangement to follow, but in its provisions to relate to the lease alone. It has two clauses, one providing for the forfeiture and the other for the consequence. 'A violation or a failure to perform any of the stipulations of this contract to be performed and kept on the part of the party of the second part,

[O. C. Railroad Co. *v.* A. and G. W. Railroad Co.]

shall operate as a forfeiture of this *lease.*' Thus the subject of forfeiture is the lease, which as we have seen was not to begin till the contract of construction had been fulfilled. Forfeiture cannot apply to that which has no existence. But test this by the consequence. 'And the party of the second part may at once take possession of and use and occupy *the road with all its fixtures and appurtenances* as fully and completely as though it *had been* constructed by itself, and without liability over to the party of the second part.' The consequence is not to take possession and *finish* the *construction and equipment*, but *to use and occupy* that which *had been* constructed; and this without liability, to wit, without paying or refunding the cost of construction. The words ' a violation or a failure to perform any of the stipulations of this contract,' are general language, but plainly are restricted to the subject-matter which is the lease, the forfeiture of which is to pass the possession of the road into the hands of the plaintiffs. Thus the language of the seventh section, its place in the arrangement of parts, its purpose and its consequence, appropriate the forfeiture to the lease alone, and not to the contract for construction. This conclusion is strongly supported by the reasons which we can discover for the provision. There seems to be no great reason why it should apply to the construction, while there are very strong reasons why it should apply to the lease alone. It was for the manifest interest of the plaintiffs that the defendants should go on and complete the road without forfeiture, for it was to be done at the entire cost of the defendants, without any provision for repayment at any time, and it secured to the plaintiffs important rights in the transmission of oil on the defendants' road. Delay in finishing the construction of the road-bed and ironing the road was provided against by covenant, and after that, the making the road ready for use was secured by the defendants' own interest. But after the road became vested in the defendants by lease, most important rights of the plaintiffs were to be protected. As an independent and short road the plaintiffs' railroad would be subject to competition, and to be overwhelmed by the adverse action of a large and powerful corporation. But the lease secured in return to the plaintiffs all the advantages of a continuous railway east and west from its connection with the defendants' road at Corry. The defendants were bound to receive and carry daily all the oil arriving over the plaintiffs' road at Corry, and to carry on their own road, so far as it comes into competition, at prices which would not be less than the plaintiffs charged on their road, and to make no discrimination against the plaintiffs' road. These important advantages were to continue during the term of the lease, which was for ninety-nine years. It therefore became a matter of the utmost importance that these rights should be protected by a provision for occupancy and use in case of a breach. An action for

[O. C. Railroad Co. v. A. and G. W. Railroad Co.]

damages, every one is aware, is a very insufficient remedy, leading oftentimes to interminable and unsatisfactory litigation.

"Therefore the provision for forfeiture of the lease, in case of a breach, and a right to take possession, and occupy without refunding the costs of construction, was the very means of keeping the defendants to a strict and faithful performance of the terms of the lease. If right in the application of the forfeiture provided in the seventh section to the lease alone, then time was not of essence in the performance of the contract for constructing and ironing the road-bed by the 1st of January 1865, and a special injunction must be refused and the cautionary order removed."

Accordingly, on the 15th of October 1867, the bill was dismissed with costs.

The plaintiffs appealed, and assigned this decree for error.

*S. G. Thompson* and *H. M. Phillips*, for appellants.—Time may be of the essence of a contract: McCrellish v. Churchman, 4 Rawle 37 ; Fisher v. Worrall, 5 W. & S. 485 ; Dauchy v. Pond, 9 Watts 51 ; Benedict v. Lynch, 1 Johns. Ch. 370 ; Taylor v. Longworth, 14 Peters 175.

Equity will not relieve for breach of covenants other than those for the payment of money : Jeremy's Eq. 475 ; Hill v. Barclay, 18 Ves. 56 ; Reynolds v. Pitt, 19 Id. 134 ; Sparks v. The Liverpool Water Co., 13 Id. 428 ; Donnington v. Jackson, 1 Vern. 448 ; Waddman v. Calcraft, 10 Ves. 67 ; The East Lan. Railroad v. Hallersly, 8 Hare, 32 Chan. R. 76 ; Davis v. Moss, 2 Wright 346 ; Shaeffer v. Shaeffer, 1 Id. 525 ; Sharon Iron Co. v. Erie, 5 Id. 341 ; Patchin v. Lamborn, 7 Casey 314 ; Reybold v. Vorhees, 6 Id. 120 ; Miller v. Phillips, 7 Id. 224 ; Ward v. Wandell, 10 Barr 98.

*G. Church*, for appellees.—Time will seldom be deemed essential in equity : Bellas v. Hays, 5 S. & R. 427 ; Decamp v. Feay, Id. 323 ; Morse v. O'Reiley, 6 Pa. L. J. 501. Contracts against public policy and in conflict with the general interests of society are inoperative : Seidenbender v. Charles, 4 S. & R. 172 ; Badgley v. Beale, 3 Watts 264 ; Filson v. Himes, 5 Barr 452 ; Hatzfield v. Gulden, 7 Watts 152 ; Jenkins v. Fowler, 12 Harris 308 ; Clippinger v. Hepbaugh, 5 W. & S. 315 ; Chitty on Contracts, 653 ; Story on Contracts, §§ 545, 546 ; 1 Story's Eq. J., § 294–305.

The omission of plaintiffs to furnish their bonds is a defence for not completing on the day : 2 Parsons on Contracts, 187, 189, 191 ; Franklin v. Miller, 4 Ad. & Ell. 599 ; Hunt v. Silk, 5 East 449.

A forfeiture will not be enforced in equity : 2 Story's Eq. J., § 1319 ; Livingston v. Tompkins, 4 Johns. Ch. R. 431 ; Benedict v. Lynch, 1 Id. 375.

He referred also to Act of incorporation of plaintiffs, April 2d

1860, §§ 3, 4, Pamph. L. 422, and Supplement, January 29th 1862, Pamph. L. 5.

The opinion of the court was delivered, January 13th 1868, by SHARSWOOD, J.—A bill for the special enforcement of a contract is an appeal to the conscience of the chancellor. He exercises, upon the question presented, a sound discretion, under all the circumstances of the case, for the most part untrammelled by rule or precedent. If the bargain is a hard or unconscionable one, if the terms are unequal, if the party calling for his aid is seeking an undue advantage, he declines to interfere. Therefore it is that although a court of equity will not in general relieve against a forfeiture, unless it be in the case of non-payment of rent, where an exact and just compensation can be made by decreeing to the landlord the arrears of his rent with interest and costs, yet they never lend their assistance in the enforcement of one, but leave the party to his legal remedies. More especially is this the case where the contract has been substantially carried out, but its literal fulfilment has been prevented by uncontrollable circumstances. It is unnecessary to cite authorities in support of these positions. They underlie all the cases which abound on the subject, and have been canonized in the standard elementary works: Jeremy's Eq. 425, 471; Adams' Eq. 77, note; 2 Story's Eq., § 742, 750, 1319, 1323. They commend themselves to every man's common sense of reason and justice, in view of the special objects which courts of equity have been constituted to effectuate. They would otherwise become engines of oppression and injustice.

Perhaps there could be no clearer illustration of the value and importance of these principles than in the circumstances of the case now presented for decision. The defendants, the Atlantic and Great Western Railroad Company, on the 14th January 1864, entered into a contract with the Oil Creek Railroad Company, by which they agreed, at their own expense, to furnish the iron and all other materials, and grade, construct and complete in a good and workmanlike manner, a railroad from Oil City to Franklin, the work to be commenced within thirty days of date, and be completed on or before the 1st day of January 1865. As the consideration for this work, the plaintiffs agreed that when the said road from Oil Creek to Franklin should be so constructed, to lease, and thereby did lease the same to the defendants, for the term of ninety-nine years from the date of the covenant at the nominal rent of $1 per annum, and with certain stipulations as to the tariff of charges for freights and other matters for the advantage of the plaintiffs. The seventh article provides that " a violation of or failure to perform any of the stipulations of this contract to be performed and kept on the part of the party of the second part (the defendants), shall operate as a forfeiture of this

[O. C. Railroad Co. v. A. and G. W. Railroad Co.]

lease, and the party of the first part (the plaintiffs), may at once take possession of and use and occupy the road with all its fixtures and appurtenances as fully and completely as though it had been constructed by itself and without any liability over to the party of the second part." It is sometimes a question what is or is not a forfeiture? That question does not arise here, as the parties have explicitly settled it by their own language. The railroad was not completely finished and equipped on the 1st of January 1865. The defendants had progressed to within two or three miles of Oil City, which seems to be a place of somewhat extensive and unascertained boundaries. The season was a severe one, and the difficulties of the construction much increased in the approach to its terminus. According to the plaintiffs' own testimony it could have been finished within a month. An examination was made of the road by the chief engineer of the plaintiffs on the 1st day of January 1865, although the defendants had the whole of that day before a forfeiture could accrue, and might have made some progress, if it had not been, as it appears, Sunday. On the 3d of January 1865 the plaintiffs, by resolution of their board of directors, declared the road to be forfeited. On the 6th of January formal notice was given to the engineer and foreman of the defendants of this action, and possession was taken of the unfinished part of the road by placing some cars on it. The defendants went on, however, and completed the road by the early part of spring. The plaintiffs pray that the lease may be declared forfeited, that they may be protected in the possession of that part of the roadway of which they have possession, that an account be taken of the cost of the road, and that upon payment thereof the contract may be delivered up to be cancelled, and that defendants be enjoined from interfering with or preventing the plaintiffs from taking peaceable possession of the said road, or from claiming or exercising any right as lessees.

Thus distinctly is this court asked to enforce what the parties themselves agreed to be and denominated a forfeiture; to deprive the defendants of the entire benefit of their contract and lease, and that on the ground that a partial failure of performance has occurred, not productive of serious loss to the plaintiffs, and for which in all probability it would be difficult to persuade any jury to give them more than nominal damages. The judge at Nisi Prius was clearly right in dismissing the bill with costs, and the decree is affirmed at the costs of the appellants.

Decree affirmed with costs.