Fulton v. General Electric Supply Corporation

*William J. Fuchs* for *Edmonds, Obermayer & Rebmann*, for plaintiff.

*Howard Burtt*, for defendant.

MACNEILLE, P. J., December 13, 1950.—This is a bill in equity brought by plaintiff, Frederick M. Fulton, against the General Electric Supply Corporation, former employer of plaintiff, praying for an accounting and the awarding of commissions allegedly due plaintiff for services rendered during the year 1947 and part of the year 1948.

From the pleadings, the evidence, and stipulation filed by the parties, the court makes the following

## Findings of Fact

1. Plaintiff, Frederick M. Fulton, was employed by defendant, General Electric Supply Corporation, under written agreements for the periods from January 1, 1947, to December 31, 1947, and from January 1, 1948, to May 1, 1948, as an appliance salesman in the Greater Philadelphia area.

2. The written agreement for the year 1947 was signed and executed January 29, 1947, and the written agreement for the year 1948 was signed and executed March 18, 1948.

3. Plaintiff began his employment on January 1, 1947, and sold appliances for defendant for the entire year in accordance with the terms of the agreement executed by the parties.

4. Plaintiff, under the terms of the agreement for the year 1948, was employed as an appliance salesman for defendant from January 1, 1948, until May 1, 1948, when the employment was terminated.

5. The contracts of employment for the years 1947 and 1948 were identical in terms except that the maximum commission credit at the rate of 12½ percent in the 1947 contract was fixed at $5,600, while in the 1948 contract it was fixed at $6,000.

6. The contract signed by the parties, sometimes referred to as "Field Salesman's Commission Plan", provided, in part, as follows:

"1. Basic Commission Rate: The Salesman is hereby assigned a basic commission rate of 12½% subject to Paragraphs 3 and 4.

"2. Credited Gross Margin: The Salesman will be credited with the Corporation's Gross Margin on sales made by the above named District of the Corporation during the Salesman's employment under this Plan, within the period specified above, of commodities to accounts which at the time of the sale were assigned to the Salesman.

"3. Commission Credit on Credited Gross Margins: The Salesman will be given, during the period specified above, a commission credit on the Gross Margin credited to the Salesman under Paragraph 2 computed at the basic rate assigned to him under Paragraph 1 until the aggregate amount of commission credit given to him equals $5,600. Thereafter, during the remainder of the period specified above, the Salesman will be given a commission credit on all further Gross Margin credited under Paragraph 2 computed at a rate to be determined by the Manager of the above named District and the President of the Corporation in their sole discretion at the end of the period covered by the Plan.

"4. Commission Payable to Salesman: From the total commission credit computed under Paragraph 3, there will be deducted the salary, drawing account or other compensation (other than prize awards and push commissions) received by the Salesman for the period on

which such credits were computed—and the remainder will represent the total amount of commission to which the Salesman will be entitled for the period, subject to the rules which follow:

"1. The Commission provided for in the Plan will be payable to the Salesman only if at the end of the calendar year specified in the Plan he is in the employ of the Corporation, or if his employment shall have been terminated prior thereto by death or retirement, or by reason of permanent disability or retirement on pension under the Corporation's pension rules provided that if his employment is terminated prior to the end of said calendar year by death or retirement or by reason of permanent disability or retirement on pension under the Corporation's pension rules, the figure specified in the fourth line of Paragraph 3 shall be reduced by that percentage which the length of time the Salesman was not employed by the Corporation in the period specified in the Plan, is of the period specified in the Plan. Payment of such commission will be made after completion of the Corporation's annual audit covering the calendar year, on or about the succeeding April 1. . . .

"7. The Corporation may in its absolute discretion, discharge or lay off the Salesman, or assign him to other duties at any time, with or without cause, and if any such is done, or if the Salesman's employment hereunder is otherwise terminated, prior to the end of the calendar year specified in the Plan, the Salesman will not be entitled to any compensation hereunder, except as provided in Rule 1. . . .

"9. The Corporation shall have the right in its absolute discretion from time to time to change the basic commission rate specified in Paragraph 1 of the Plan; to change the assignment of accounts to the Salesman in whole or in part; and to credit the Salesman only with such portion of the Corporation's Gross Margin

on any assigned account, as it in its judgment deems fair and equitable. . . ."

7. The gross sales made by defendant credited to plaintiff for the calendar year 1947 amounted to $366,880. The gross margin credited to plaintiff on said sales amounted to $60,474.

8. The rate of commission credit for the year 1947 on the excess gross margin credited to plaintiff was fixed by the manager of the district and the president of the corporation at three percent.

9. The total commission credit, including the aggregate credit ascertained at the rate of 12½ percent, plus three percent on the gross margin, amounted to the total sum of $6,070 for the year 1947.

10. In February 1948 plaintiff received from defendant, without protest, a sum representing, together with his drawings heretofore paid, a total compensation of $6,070 for the year 1947.

11. Plaintiff continued in the employ of defendant under the terms of the agreement for the year 1948, which was actually signed and executed on March 18, 1948, until May 1, 1948.

12. During the period from January 1 to May 1, 1948, plaintiff received a drawing of $225 per month or a total of $900.

13. On April 30, 1948, plaintiff's employment was terminated at the instigation of defendant.

14. The gross sales credited to plaintiff for the months of January, February, March and April 1948 amounted to $172,609. The gross margin credited to plaintiff on these sales amounted to $25,616.

15. The agreement for the year 1948 provided that the commission rate of 12½ percent would apply until the aggregate amount of commission credit equalled $6,000, and that commission credit on further gross margin was to be computed at a rate to be determined

by defendant in its sole discretion at the end of the period.

16. Plaintiff was paid for the year 1948 only advance drawings in the amount of $900 and was not paid a commission rate of 12½ percent upon any amount of gross margin credited to him.

## *Discussion*

Plaintiff has brought the present bill in equity against his former employer praying for an accounting and the awarding of commissions to him for services rendered during the year 1947 and the months of January, February, March and April in 1948.

Plaintiff in his amended bill of complaint avers that he was employed by defendant for the periods from January 1, 1947, to December 31, 1947, and from January 1, 1948, to May 1, 1948, as an appliance salesman in the Greater Philadelphia area; that it was agreed and understood between the parties that plaintiff's remuneration was to be on a gross commission basis with expense and drawing accounts; that plaintiff was to receive 12½ percent of defendant's gross margin of profit on all sales of commodities assigned to plaintiff in the area, plus expenses, less drawings; that on January 29, 1947, the parties entered into a written employment contract providing for said commissions and covering the periods from January 1, 1947, to December 31, 1947, and on March 18, 1948, the parties entered into a similar contract covering the period from January 1, 1948, until December 31, 1948; that for the year 1947 defendant's gross sales credited to plaintiff amounted to a total of not less than $366,880, on which there was a gross margin of profit of not less than $60,-474; that defendant did not pay plaintiff any commission for the year 1947 until February 1948, when defendant paid plaintiff for the year 1947 a total commis-

sion credit of $6,070; that the sum was allegedly calculated on the basis of 12½ percent of the gross margin up to $45,000, representing $5,600 in commissions and three percent thereabove; that the above compensation was paid by defendant relying upon paragraph 3 of the written contract; that the calculation on the basis of three percent was improper and not in accordance with law; that the provisions of paragraph 3 of the contract, giving defendant's manager and president the right in their sole discretion to compute the rate of plaintiff's commission after the aggregate for the year equaled $5,600, were not legally enforcible because the provisions rendered the consideration for the entire contract illusory, against public policy and constituted an unlawful penalty and forfeiture; that the proper commissions due plaintiff for the year 1947 were 12½ percent of at least the total known gross margin of $60,474 or the sum of $7,559.25; that with the deduction of $6,070 paid in February 1948 there still remains due and owing plaintiff for the year 1947 the sum of $1,489.25; that during the calendar year 1948 defendant without cause did, on May 1st, discharge plaintiff without notice; that for the period from January 1, 1948, to May 1, 1948, defendant's gross sales credited to plaintiff amounted to a total not less than $172,609, on which there was a gross margin of profit of not less than $25,616; that defendant has paid plaintiff no commission whatsoever for the period from January 1, 1948, to May 1, 1948; that defendant has refused to pay any commission for the reason that such commission was payable under the terms of the agreement only if at the end of the calendar year plaintiff was in the employ of the corporation; that the employment contract further provided that defendant may in its absolute discretion dismiss, discharge or lay off plaintiff or assign him to other duties at any time with or without

cause, and if the employment is terminated prior to the end of the calendar year plaintiff will not be entitled to any compensation except as otherwise provided; that defendant's refusal to pay any commission for the year 1948 was improper and not in accordance with law; that the provisions of the contract giving defendant the absolute right at any time to discharge plaintiff without cause and deprive him of any and all commissions, and the provision that plaintiff must be in the employ of defendant at the end of the calendar year in order to receive commissions, rendered the consideration for the entire contract illusory and against public policy and constitute an unlawful penalty and forfeiture; that defendant owes plaintiff commissions for the period from January 1, 1948, to May 1, 1948, at the rate of 12½ percent of at least the total known gross margin of $25,615, or $3,202; that deducting the amount of $900, representing allowances received, there remains due and owing plaintiff for the period from January 1, 1948, to May 1, 1948, the sum of $2,302; that defendant owes plaintiff for both periods the total sum of $3,-791.25; that plaintiff has asked for a written accounting and full payment, but defendant has refused and still refuses to render an accounting and make payment of commissions.

The field salesman's commission plans (attached to the bill in equity), executed by the parties for the year 1947 and for the year 1948, are identical with the exception that the commission credit on the gross margin profit is limited to the sum of $5,600 under the agreement for 1947 and under the agreement for 1948 is limited to $6,000. The pertinent provisions of the agreement are set forth below as follows:

"1. Basic Commission Rate: The Salesman is hereby assigned a basic commission rate of 12½% subject to Paragraphs 3 and 4.

"2. Credited Gross Margin: The Salesman will be credited with the Corporation's Gross Margin on sales made by the above named District of the Corporation during the Salesman's employment under this Plan, within the period specified above, of commodities to accounts which at the time of the sale were assigned to the Salesman.

"3. Commission Credit on Credited Gross Margin: The Salesman will be given, during the period specified above, a commission credit on the Gross Margin credited to the Salesman under Paragraph 2 computed at the basic rate assigned to him under Paragraph 1 until the aggregate amount of commission credit given to him equals $5,600. Thereafter, during the remainder of the period specified above, the Salesman will be given a commission credit on all further Gross Margin credited under Paragraph 2 computed at a rate to be determined by the Manager of the above named District and the President of the Corporation in their sole discretion at the end of the period covered by the Plan.

"4. Commission Payable to Salesman: From the total commission credit computed under Paragraph 3, there will be deducted the salary, drawing account or other compensation (other than prize awards and push commissions) received by the Salesman for the period on which such credits were computed—and the remainder will represent the total amount of commission to which the Salesman will be entitled for the period, subject to the rules which follow:

"1. The Commission provided for in the Plan will be payable to the Salesman only if at the end of the calendar year specified in the Plan he is in the employ of the Corporation, or if his employment shall have been terminated prior thereto by death or retirement, or by reason of permanent disability or retirement on pension under the Corporation's pension rules provided that if

his employment is terminated prior to the end of said calendar year by death or retirement or by reason of permanent disability or retirement on pension under the Corporation's pension rules, the figure specified in the fourth line of Paragraph 3 shall be reduced by that percentage which the length of time the Salesman was not employed by the Corporation in the period specified in the Plan is of the period specified in the Plan. Payment of such commission will be made after completion of the Corporation's annual audit covering the calendar year, on or about the succeeding April 1. . . .

"7. The Corporation may in its absolute discretion dismiss, discharge or lay off the Salesman or assign bim to other duties at any time, with or without cause, and if any such is done, or if the Salesman's employment hereunder is otherwise terminated, prior to the end of the calendar year specified in the Plan, the Salesman will not be entitled to any compensation hereunder, except as provided in Rule 1. . . .

"9. The Corporation shall have the right in its absolute discretion from time to time to change the basic commission rate specified in Paragraph 1 of the Plan; to change the assignment of accounts to the Salesman in whole or in part; and to credit the Salesman only with such portion of the Corporation's Gross Margin on any assigned account, as it in its judgment deems fair and equitable."

Defendant has filed an answer in which it is admitted that plaintiff was employed by defendant during the period from January 1, 1947, to December 31, 1947, and from January 1, 1948, to May 1, 1948. Defendant denies that plaintiff was to receive 12½ percent of defendant's gross margin of profit on all sales and on the contrary avers that plaintiff's compensation was to be determined in accordance with the terms and conditions of the contracts in which it was provided that the basic

commission rate of 12½ percent on the gross credit to plaintiff shall apply only until the aggregate amount of commission credit given to him equals $5,600, under the contract of January 29, 1947, and $6,000 under the contract of March 18, 1948, and that commission credits on all further gross margin are to be computed at a rate to be determined by the manager of the district and the president of the corporation in their sole discretion at the end of the period covered by the contract. Defendant avers that the rate so determined at the end of the period covered by the contract of 1947 was 3 percent, and that no excess commission credit was determined or allowed for the period covered by the contract for 1948 for the reason that plaintiff left the employ of defendant on May 1, 1948, and that, therefore, no commission was payable to plaintiff. Defendant avers that in accordance with the written contracts the excess commission for the year 1947 was not payable until about April 1, 1948, and that defendant did pay to plaintiff in February 1948 the balance of commission due plaintiff for the preceding year; that in February 1948 he received, accepted and cashed without protest, a check in the sum of $3,495, representing the difference between the drawing account total of $2,575 and the total commission credit of $6,070; that this sum represented the entire amount of commission credit to which plaintiff was entitled for the year 1947; said sum being calculated on the basis of 12½ percent of the gross margin up to $44,800, amounting to the sum of $5,600 plus three percent of the balance of the gross margin over and above $44,800. Defendant denies that plaintiff was entitled to 12½ percent of the total gross margin or any other sum representing any excess over the sum of $6,070 already paid to and accepted by plaintiff without protest. Defendant denies that it discharged plaintiff on May 1, 1948, or at any other time, and on the contrary avers that on or about April 30, 1948, plaintiff

voluntarily left the employ of defendant. Defendant avers that plaintiff was paid the sum of $225 per month during the period from January 1 to May 1, 1948, or a total of $900, and that no further payments are due plaintiff by defendant for the year 1948. Defendant denies that plaintiff is entitled to 12½ percent of the gross margin for the period from January 1, 1948, to May 1, 1948, and denies that there is due and owing to plaintiff for that period the sum of $2,302 or any other sum. Defendant further denies that there is due and owing to plaintiff the total sum of $3,791.25 or any other sum.

On November 20, 1950, the parties, by their attorneys, filed a stipulation which provided that the gross sales made by defendant credited to plaintiff for the calendar year 1947 amounted to $366,880; that the gross margin credited to plaintiff on these sales amounted to $60,474; that the gross sales made by defendant credited to plaintiff for the months of January, February, March and April 1948 amounted to $172,-609, and that the gross margin credited to plaintiff on these sales amounted to $25,616.

The case came on for trial on June 9, 1950, and testimony was introduced on behalf of plaintiff and defendant.

Plaintiff testified that he was hired by the General Electric Supply Corporation as an appliance salesman on January 1, 1947. He testified that on or about May 1, 1948, he was called into the office by George H. Salmon, the appliance sales manager, and was told that he did not belong in the major appliance department and that he would be transferred to another department. He was told he could work for two weeks for half of his monthly drawing account, and that he would then receive the other half of the monthly drawing account if he signed a release as to certain commissions which had not been

paid. Plaintiff testified that he refused to sign the release or work the additional two weeks as he did not believe that an adequate settlement was offered. Plaintiff's testimony concerning the termination of the employment is as follows:

"A. I said to Mr. Salmon: 'Does that mean I am fired?'

"And he said: 'Yes.'

"Q. Did he tell you from what date you were fired? Did he say that at the same time?

"A. He said: 'As of now, but you can work for two more weeks.'

"Q. I don't get that. He said: 'You are fired as of today, but you may stay two more weeks'?

"A. In other words, we have let you go, but if you wish to—

"Q. Don't interpret it. Tell us what he said.

"A. He said: 'If you wish to, you can work two weeks for which we will give you half your monthly draw. Then we will give you the other half of your monthly draw if you sign a release to your commissions.'

"Now, the operating manager at a later date again offered me $100 to sign a release to my commissions.

"Q. When was that?

"A. That was within, I would say, 30 or 60 days after I was let go. I talked—

"Q. That was after you say you were fired?

"A. I was offered—

"Q. We are not asking you about that. We are trying to find out how and when you were fired.

"A. I was fired on May 1st, sir.

"Q. And it is on that date that we want to find out what was said to you. And you say he said to you: 'You are fired'?

"A. Yes, sir. I said: 'Does that mean I am fired?' And he said: 'Yes'."

George H. Salmon testified that he was the appliance sales manager of the General Electric Supply Corporation and that plaintiff was under his supervision. He stated that near the end of April he called plaintiff into his office and told him he did not believe he was going to be successful as a major appliance salesman, but he would give him a position selling other products such as traffic appliances, radios and vacuum cleaners. He stated that plaintiff went into a fit of rage and said he would not take the job. At that time he resigned and has not worked for the company since.

On the basis of the above pleadings, stipulation, and evidence the court must determine whether or not plaintiff is entitled to additional compensation for the years 1947 and 1948.

We will first consider the claim of plaintiff for additional compensation and commissions for the year 1947, in accordance with the provisions of the agreement between the parties which is referred to as the salesman's commission plan. The contract for the year 1947 provided for the payment of a basic commission rate at 12½ percent on the gross margin credited to plaintiff until the aggregate amount of commission credit equaled $5,600. Thereafter a commission credit was allowed on all further gross margin at a rate to be determined by the manager of the district and the president of the corporation. The excess of such commissions over and above plaintiff's regular drawing account of $200 per month was to be paid on or about April 1, 1948. The contract for the year 1947 was signed on January 29, 1947. Plaintiff worked for the entire year under this agreement and in February 1948 plaintiff accepted without protest payment representing a total commission credit of $6,070 for the year computed in accordance with the contract. Thus this contract was fully executed and discharged. Even if

the contract was initially defective because of lack of consideration or lack of mutuality where plaintiff has executed and performed the contract without protest and has been offered and accepted remuneration for the work done, it cannot now be said that the contract was illusory and not binding upon the parties. It may well be that at the inception the contract was unenforcible for lack of mutuality and that defendant's promise was illusory because plaintiff's employment was at will. In any event plaintiff's promise to work for defendant was at least a unilateral promise. However, where as here, the agreement has been fully performed and each party carries out the initial promises in accordance with the terms of the agreement, a consideration arises and the contract having been executed the provisions are obligatory and the contract will not be disturbed.

We are obliged to find that plaintiff has no additional right to compensation for the year 1947. See A. L. I. Restatement of the Law of Contracts, §386. See also Vines v. General Outdoor Advertising Co., Inc., 80 F. Supp. 281; Philadelphia Ball Club v. Lajoie, 202 Pa. 210; 1 Williston on Contracts (2d ed.), sec. 106, p. 366.

We next have for consideration whether or not plaintiff is entitled to additional compensation in the nature of commissions for services rendered under the agreement of 1948 for the months of January, February, March and April of that year.

In determining whether or not plaintiff is entitled to any further compensation under the sales commission agreement of 1948, it is only necessary to construe the contract together with the admitted facts contained in the pleadings and stipulation filed by the parties. We do not deem it necessary to determine whether or not plaintiff was actually fired or whether he resigned from the employ of defendant. The facts clearly indicate that defendant instigated the conversation which led to the

termination of the employment. It is clear that defendant corporation did notify plaintiff that his duties were to be changed and that he would no longer be employed as a salesman on a commission basis under the terms of the sales agreement. It is also clear that because of this situation the contract of employment was terminated. We thus have for determination whether or not plaintiff is entitled to additional compensation in excess of the drawings he received for January, February, March and April 1948, which amounted to only the sum of $900. The contract signed by the parties for 1948 clearly provided that plaintiff was entitled to an aggregate amount of commission credit for the entire year of $6,000. It is admitted by the parties that the gross sales made by defendant credited to plaintiff for the months of January, February, March and April 1948 amounted to $172,609, and that the gross margin credited to plaintiff on the sales amounted to $25,606.16. In construing the contract for 1948 we again have for consideration the obligations of the parties under a partially executed agreement. Again it may well be that this contract at its inception was unenforcible for lack of mutuality and defendant's promise was illusory because plaintiff's employment was at will. However, plaintiff has accepted defendant's offer to perform services and plaintiff has performed his services for the first four months of the year 1948. Plaintiff has in every way performed in accordance with the provisions of the written contract. Performance having been completed at least for the first four months of 1948, we must determine whether or not defendant is bound to fulfill its promise and make compensation on the basis agreed to. Defendant, however, contends that plaintiff is not entitled to any compensation for the year 1948, other than the advance drawings of $225 per month already paid and accepted by plaintiff. Defendant bases its right to re-

fuse further compensation on the provision of the contract, which provides that plaintiff will not be entitled to any compensation other than his drawing account if the employment is terminated prior to the calendar year. The sole question then for consideration is whether or not enforcement of such a provision amounts to a penalty and a forfeiture and is so unreasonable that a court of equity must refuse to recognize it. In determining whether or not the provision mentioned above will be enforced in a court of equity it is necessary to scrutinize the entire transaction and require that all the rights of the person, the forfeiture of whose rights are sought, be respected. See Murray v. Iron Hall of Baltimore City, 9 Pa. Superior Ct. 89. Said the court, at page 94:

"While a court of equity will sustain a forfeiture under some circumstances, it will scrutinize a transaction and require that all the rights of the assured shall be respected."

It has often been held that equity will generally not relieve against forfeiture, but also it never aids in enforcing one especially when the contract has been substantially carried out by the parties. See Oil Creek Railroad Company v. Atlantic and Great Western Railroad Company, 57 Pa. 65.

The relief against forfeitures is a well recognized field of equity jurisdiction and it has been held many times that in the proper case where fair dealing and good conscience so require, equity will intervene to prevent a forefeiture. Forfeitures are odious to equity; it is seldom that it will enforce them even in a clear case, but never in a doubtful one. See Brown v. Vandergrift, 80 Pa. 142; Wick v. Bredin, 189 Pa. 83; Blue Ridge Metal Manufacturing Company v. Proctor et al., 327 Pa. 424.

It seems clear to us that the monthly payments paid to plaintiff were in the nature of drawings or advances

on commissions. The provision of the contract providing for the forfeiture of commissions if the employment is terminated is in no way related to any damages which might be sustained by defendant as a result of the severance of the employment relationship. The stipulation of the parties clearly reveals that plaintiff had credited to him gross sales for the first four months of 1948 in the amount of $172,609 and that the gross margin of credit on such sales amounted to $25,616. Certainly then the termination of the employment does not appear in any way to relate to any damages that could possibly be sustained by defendant. Nor is the suggestion that such provision was designed to keep the salesmen in the corporation's employment convincing. The penalty or forfeiture clause operates whether the employment be terminated either by the employer or by the employe, and whether voluntary or involuntary. Defendant corporation, at its sole election, was able to deprive plaintiff of his commissions which were his sole compensation even though plaintiff elected and desired to continue his employment. As shown by the gross sales attributed to plaintiff, the commissions for which plaintiff seeks recovery seem not unreasonable. On the other hand, to permit defendant to enjoy the benefits gained by plaintiff's services and refuse to pay commissions in accordance with the terms of the contract for work actually completed, appears to us to be unreasonable and to amount to a penalty and a forfeiture.

We have carefully scrutinized the entire transaction between the parties. There is no question that defendant corporation was within its rights in terminating the employment of plaintiff at any time. It is true that this was an employment at the will of defendant, but so long as plaintiff faithfully carried out his duties, he should be compensated for the work performed. Defendant agreed to pay commission at the

rate of 12½ percent up until the aggregate gross credit equaled $6,000 for the entire year. The provision that such a commission need not be paid if plaintiff was not in the employ of defendant at the end of the year was unreasonable and unrelated to any damages that defendant might suffer. We believe, therefore, that the penalty and forfeiture provision of the contract is unenforcible and that plaintiff is entitled to compensation for the first four months of the year 1948, based on 12½ percent of the aggregate gross credit equal to $6,000 for the entire year. Since plaintiff was only employed for the first four months of the year, the commission credit should properly be based upon a proportion of the aggregate gross credit that plaintiff was entitled to for the full year. It would thus appear that plaintiff was entitled to a commission of $2,000 for the first four months of the year minus drawings already received in the amount of $900, or a total amount of $1,100.

We do not believe that plaintiff is entitled to a further commission credit in excess of a proportion of the amount ascertained at the rate of 12½ percent. It is true that paragraph 3 provides as follows:

"Commission Credit on Credited Gross Margin: The Salesman will be given, during the period specified above, a commission credit on the Gross Margin credited to the Salesman under Paragraph 2 computed at the basic rate assigned to him under Paragraph 1 until the aggregate amount of commission credit given to him equals $6000.00. *Thereafter, during the remainder of the period specified above, the Salesman will be given a commission credit on all further Gross Margin credited under Paragraph 2 computed at a rate to be determined by the Manager of the above named District and the President of the Corporation in their sole discretion at the end of the period covered by the Plan.*" (Italics supplied.)

However, since plaintiff was not employed at the end of the calendar year and since the contract itself does not provide the rate upon which a further commission credit will be allowed, we do not believe that we may substitute our discretion in place of the manager and president of the corporation. We believe that plaintiff is entitled to only the basic commission provided for in the contract and specified to be at the rate of 12½ percent until the aggregate amount of commission credit equals $6,000.

We deem it necessary only to comment briefly on the contention of defendant that employment agreements similar to the ones involved in this case, have been construed by the courts in other jurisdictions. The cases of Stanford v. General Electric Supply Corporation, civil action no. 813, U. S. D. C. for Eastern District of Virginia, and McCamm v. General Electric Supply Corporation, civil action no. 644, U. S. D. C., Southern District of Texas, although apparently involving the same plan, are not persuasive. Neither of these cases dealt with the forfeiture aspect of the agreement.

### Conclusions of Law

1. The contract between plaintiff and defendant for the year 1947 has been fully executed and plaintiff is entitled to no additional compensation thereunder.

2. The contract of employment between plaintiff and defendant for the year 1948 has been partially executed and plaintiff is entitled to commissions for January, February, March and April of 1948.

3. Plaintiff is entitled to commissions for services rendered for January, February, March and April 1948, at the rate of 12½ percent of the gross margin of sales credited to plaintiff for sales made during those months, but limited to $2,000 or four twelfths of the aggregate commission credit entitled to for the year, which was $6,000.

4. Plaintiff is entitled to $1,100 or a total commission for the year 1948 of $2,000, minus $900 in drawings already paid and received by plaintiff.

5. Cost of these proceedings is to be paid by defendant.

### Decree Nisi

And now, to wit, December 13, 1950, it is ordered, adjudged and decreed that defendant, General Electric Supply Corporation, pay over to plaintiff, Frederick M. Fulton, the sum of $1,100, representing commissions owed to and payable to plaintiff for services rendered during the months of January, February, March and April 1948.