Barraclough, et ux., *v.* The Atlantic Refining Company, Appellant.

Argued March 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*M. David Halpern*, with him *Jubelirer, Carothers & Krier*, for appellant.

*Stephen W. Beik*, with him *Miller, Kistler, Campbell & Mitinger*, for appellees.

OPINION BY VAN DER VOORT, J., September 23, 1974:

The instant appeal arises following a judgment for the plaintiffs-appellees in an ejectment proceeding in Centre County. The plaintiffs in this action were and are the lessors of a property in Port Matilda, Pennsylvania, which has been leased to the defendant-appellant for some sixteen years.

The genesis of the relationship between the parties, which ultimately led to the instant dispute, was in 1956. At that time the appellee Mr. Barraclough was desirous of becoming a service station operator. A deal was struck with the appellant (hereinafter re-

ferred to as Atlantic) whereby the Barracloughs made a ten thousand ($10,000) dollar down payment on a property already having a service station erected thereon. Contemporaneously, Atlantic made arrangements for the Barracloughs to obtain a mortgage from a bank for twenty thousand ($20,000) dollars to cover the remaining balance on the thirty thousand ($30,000) dollar purchase price. The parties also signed a lease for the service station premises whereby Atlantic undertook to pay one hundred sixty-eight ($168.00) dollars per month in rental payments, for a period of fifteen years, which were assigned to the bank by the Barracloughs until such time as the mortgage loan, including accumulated interest would be paid. The parties consummated the transaction on November 17, 1956.[1]

The lease between the Barracloughs and Atlantic had an original term of fifteen years from January 28, 1957, with a rental of one hundred sixty-eight ($168.00) dollars per month. It provided for the automatic renewal of two terms of five years each with a rental of one hundred twenty ($120.00) dollars per month unless Atlantic should give ninety (90) days prior written notice of termination before any renewal term.

Atlantic's rental payment of November 1971, operated to complete the payments on the Barracloughs' mortgage debt. After receipt of the final payment, the bank on December 9, 1971, sent Atlantic a letter saying that the mortgage was paid and that all future checks should be sent to the Barracloughs. It also sent a Power of Attorney to the Recorder of Deeds of Centre County authorizing that official to mark the mortgage satisfied.

---

[1] Mr. Barraclough operated the service station until 1963. He then secured another dealer to operate the station for Atlantic and since 1963 a succession of dealers has operated the station. There is no allegation by any party that this change in operators was a breach of any agreement or in any other way affects the rights or liabilities of the parties in this action.

Atlantic, nevertheless continued to send payments for December 1971, and January 1972, to the bank instead of directly to the Barracloughs.

On January 7, 1972, on the strength of paragraph 22 of the lease[2] the Barracloughs notified Atlantic that a default in payment of the rent had occurred and advised Atlantic to cure the default within fifteen days of receipt of the notice. On January 20, 1972, Atlantic had a telephone conversation with the bank in which Atlantic was advised that the mortgage was satisfied. On February 4, 1972, Atlantic having failed to send the rental payments to the Barracloughs, the latter's attorney notified Atlantic that the Barracloughs were terminating the lease and demanding possession. Later, in February, Atlantic forwarded a draft to Barracloughs covering the December 1971 and January 1972 rentals which had been misdirected to the bank and all further rental payments since then have been sent to the Barracloughs. None of these checks was accepted or cashed by the Barracloughs.

On October 10, 1972, the appellees filed the instant action, praying for ejectment and damages for alleged continued wrongful possession of the property by Atlantic. On this appeal, the appellees argue that the appellant clearly breached the lease contract by defaulting on rental payments for two months. Appellees claim they were entitled to terminate the lease on the basis of their rights as established in paragraph 22 of the lease (quoted *supra*). The appellants counter that the appellees were not in a position to take advantage of the termination clause (paragraph 22), as the Bar-

---

[2] "If ATLANTIC defaults in the payment of rental hereunder and such default continues for fifteen (15) days after receipt from LESSOR by ATLANTIC of a notice of such default . . . , LESSOR, . . . in addition to other legal remedies, shall have the right to enter upon said demised premises, declare this lease terminated and take immediate possession thereof."

racloughs had never furnished Atlantic with proper notice of the change of "ownership of rentals" as required by paragraph 25 of the lease.[3]  Atlantic essentially argues that proper notice is a necessary condition precedent to the type of termination sought by the Barracloughs.  In the alternative, Atlantic argues that if any breach has in fact occurred, it has certainly not been the type of material breach as to justify the abrogation of this contract in light of all the facts presented. We are inclined to agree with the appellant's position.

The delay in changing the direction of payments from the bank to the Barracloughs by Atlantic, while not met with approval by this Court was certainly no more than a minor technical breach by the appellant. This Court might be inclined to feel differently if, for instance, Atlantic had either simply failed to forward any payments to either the bank or to the appellees or had continued paying the bank rather than the appellees for any fraudulent or malicious reasons.  Cf. *Russell v. Stewart,* 204 Pa. 211, 53 A. 771 (1902).  None of those situations are apparent here however.  Atlantic not only paid the rental payments when due, as they had done continuously for over fifteen years, but made a prompt attempt to remedy their error in February 1972 when they forwarded the December 1971 and January 1972 rental payments to the appellees.

What appellees have sought through this proceedings was essentially to enforce a forfeiture clause in a contract.  See *West Penn Sand & Gravel Company v. Shippingport Sand Company,* 367 Pa. 218, 80 A.2d 84 (1951).  While the instant appeal is from an action at law, we are required to apply equitable principles

------

[3] "No change in the ownership of rentals hereunder shall be binding upon ATLANTIC until fifteen (15) days after ATLANTIC shall have been furnished with the original or a certified copy of the instrument or proceedings by which said change of ownership of rentals was made."

in our resolution.[4] *Stark v. Lardin,* 133 Pa. Superior Ct. 96, 1 A.2d 784 (1938). Equity does not favor a forfeiture and it has been long held that courts should greatly hesitate in enforcing one, especially when the contract has been carried out or its literal fulfillment has been prevented by oversight or uncontrollable circumstances. See *Lynch v. Versailles Fuel Gas Company,* 165 Pa. 518, 30 A. 984 (1895); *Oil Creek Railroad Company v. Atlantic & Great Western Railroad Company,* 57 Pa. 65 (1868). In the instant case, the appellant presented proof that part of the problem in the misdirection of payments was a strike by its clerical staff during the time when payments should have started being sent directly to the Barracloughs.

Although a forfeiture may be sustained in equity in some circumstances, equity should scrutinize the transaction to assure that all of the rights of the party from whom forfeiture is sought have been respected. See *Murray v. Iron Hall of Baltimore City,* 9 Pa. Superior Ct. 89 (1898). Atlantic of course claims that it was never given *proper* notification, *as required by the lease,* of the "change of ownership of rentals" from the bank to the appellee. Paragraph 25, *supra,* required Atlantic to be furnished with ". . . the original or a certified copy of the instrument or proceedings

---

[4] An action of ejectment is a kind of "queer duck" in the law as it may be considered either an action at law or an equity action depending upon the type of dispute involved. The historical evolvement of the ejectment action to its present state and the differences between the legal and equitable actions would be cumbersome and unnecessary to include in this opinion; also, they are well explained in *Standard Pennsylvania Practice,* Chap. 67, §§1-4 and in *Goodrich-Amram Procedural Rules Service,* §1501-2. This mention is made of the differences simply to note that this Court is mindful that purely equitable ejectment actions would be outside the appellate jurisdiction of this Court and solely within the appellate jurisdiction of the Supreme Court of Pennsylvania. See The Appellate Court Jurisdiction Act of 1970 (17 P.S. §211.202(4)).

by which said change of ownership of rentals was made."
Although appellees argue that no such "instrument or
proceedings" exists, we cannot ignore the fact that the
bank furnished the Centre County Recorder of Deeds
with a Power of Attorney to mark the debt satisfied. It
is also clear that a party may seek certified copies of
instruments of record indicating payment or satisfac-
tion of debts secured by realty in Pennsylvania. 21
P.S. §386. It is not necessary for us to decide what
"instrument or proceedings" would have satisfied the
requirements of paragraph 25, but we deem it material
that appellee seeks a forfeiture, relying on a technical
aspect of the lease after having made *no* attempt to
comply with another requirement of the contract by
sending *any* certified document to the appellant.

When a party has honestly and faithfully performed
all material elements of its obligation under a contract,
but has failed to fulfill certain technical obligations,
causing no serious detriment to the injured party, it
would be odious and inequitable to compel forfeiture
of the entire contract. Instead our Courts apply the
equitable doctrine of substantial performance. See
*Sgarlat v. Griffith,* 349 Pa. 42, 36 A.2d 330 (1944).
(This case discusses the Restatement of Contracts which
is in accord with this view.) In light of all of the above,
we hold that appellees' prayer for ejectment was im-
properly granted. Further, since the appellant was
found to be in wrongful possession of the property since
early 1972, damages were assessed on the basis of the
fair rental value of the property during that time, in
disregard of the rental established by the parties in
the lease agreement. On the basis of our conclusion
that the lease should not have been forfeited, this assess-
ment of damages was incorrect. Any damages that
have been shown by the Barracloughs for the late re-
ceipt of the December 1971 and January 1972 rentals
are de minimis.

The judgment is reversed and the complaint is dismissed.

Costs to be paid by the appellant.

HOFFMAN, J., did not participate in the decision of this case.