## Hackett v. Olmsted

*Thomas Walrath,* for plaintiff.
*William Hebe,* for defendant.

KEMP, P.J., December 6, 1974.—This action comes before the court as a result of an action of ejectment based on written contracts as follows:

On September 24, 1969, plaintiff and J. William Olmsted and JoAnne A. Olmsted entered into a sales contract. Under the terms of this agreement, plaintiff was to sell, and the Olmsteds were to purchase, a parcel of land situate in the Borough of Wellsboro for the sum of $70,000. The Olmsteds made a down pay-

ment of $6,000, and under the terms of the agreement were to pay the balance of $64,000 to plaintiff over a ten-year period.

The agreement further provided that the monthly payment to plaintiff would be $710.54. Of this amount, $354.06 was to be paid to Commonwealth Bank and Trust Company to satisfy an obligation of plaintiff's and the balance of $356.48 was to be paid directly to plaintiff.

On April 21, 1971, the parties to the original sales contract entered into a supplemental agreement. Under the terms of this supplemental agreement, it would appear that J. William Olmsted's interest and obligations with respect to the original sales agreement were terminated. Defendant agreed to pay plaintiff $5,000 and to increase the monthly payments to $854.06 per month. The sum of $354.06 was to be paid directly to Commonwealth Bank and Trust Company and the balance to be paid to plaintiff directly.

## FINDINGS OF FACT

(1) The parties entered into a contract of sale in which plaintiff, vendor, retained legal title, and that by reason of said contract, defendant, vendee, obtained an equitable title.

(2) Defendant, vendee, became deliquent in the payments under the contract by reason of a mistake in interpreting the contract.

(3) The record does not reveal that plaintiff, vendor, did apprise the vendee of the delinquency by reason of reduced payments until service of the writ of possession in ejectment.

(4) Plaintiff did not submit probative proof of delinquency in the utility bills.

(5) The agreement does not make time of the essence in the payment of real estate taxes, insurance and utility bills.

(6) The court finds that the supplemental agreement requires a payment of $854.06 per month, with $354.06 to be paid directly to the Commonwealth Bank and Trust Company on an outstanding mortgage, with the remainder paid to Flora Anne Hackett directly.

(7) The court finds defendant delinquent in payments on the mortgage to the Commonwealth Bank and Trust Company, under the agreement, in the amount of $2,265.03 as of August 13, 1974. The delinquency is the result of a mutual mistake of interpretation of the contract.

(8) The court finds that the original contract was in the amount of $70,000 and that presently there is due and owing on the contract, the sum of $28,591.16 as of July 31, 1974.

## OPINION

Plaintiff and defendant, together with her then husband, entered into a contract to sell a bar and restaurant. The sale price was $70,000. The parties entered into a supplemental agreement on April 21, 1971, in which there was a modification made in the amount of payments. It appears from the record that there was a misunderstanding as to the method and amount of payments by the parties and the attorney who drafted the agreement. There is considerable testimony as to alleged defaults in payments of taxes and utility payments. The contract does not make time of the essence in the payment of any payment other than the monthly installments.

It is further apparent from the record that plaintiff is relying on the fact a check for insufficient funds was issued. It is not apparent from the record whether the offer to pay the check was within the time period required under the contract or that the check was, in fact, issued when there were insufficient funds in the bank.

If plaintiff begins an action on his legal title and defendant sets up a contract of sale as a defense, the action becomes an equitable one: Thompson v. Adams, 55 Pa. 479 (1867); Barraclough v. Atlantic Refining Company, 230 Pa. Superior Ct. 276, 326 A.2d 477 (1974).

Where plaintiff seeks to enforce his legal title by means of the common-law action of ejectment, defendant, under the mixed system of jurisprudence in Pennsylvania, is permitted to enforce his equitable title as a defense through the same action: Martinek v. Kira, 344 Pa. 676, 25 A.2d 721 (1942).

From the strict legal standpoint, the creditor is entitled to enforce the forfeiture according to the terms of the contract, but *equity*, or a court administering equitable principles under legal form, will not permit him to do so if by lulling the debtor into a false sense of security he has led him into default which otherwise the debtor might have avoided. Being an equitable doctrine, it is limited by conditions which equity imposes upon those who seek its relief, and, among such conditions, the most familiar and the oldest in the history of equity jurisprudence is the requirement that he who seeks equity must do equity. Prior indulgence by the creditor does not give the debtor automatic right to an extension, but, merely a reasonable opportunity to perform, *provided* he can show that additional time would enable him to do so.

Where time for the peformance of a contract is extended from time to time, with no intention manifest to hold to literal performance, a party cannot rescind without a demand for strict performance within a reasonable time: Riddle Co. v. Taubel, 277 Pa. 95, 120 Atl. 776 (1923); Warren Tank Car Co. v. Dodson, 330 Pa. 281, 199 Atl. 139 (1938); Dempsey v. Stauffer, 312 F.2d 360 (1962).

In this case, plaintiff, either by inadvertence or by error, allowed defendant to pay the bank the payments due on the mortgage in the amount of $238 for a period of 19 months, in place of the $354 called for in the contract. The reason for the error in payments appears from the record to be an error of the parties. The court does not find the failure to pay as set forth in the agreement to be such as would deprive defendant the benefits of the court of equity.

The contract does not provide time to be of essence in the payment of taxes, utilities and insurance. Since the only proof is that the taxes are delinquent and the contract does not fix the time for payment, the court finds that until demand is made against the real estate or plaintiff, plaintiff cannot declare the contract in default by reason of nonpayment.

Plaintiff, in her brief, recognizes that the court might well recognize the retention of all the sums paid under the contract would be unconscionable if it found the contract in default and so direct the enforcement of ejectment. The court does find that the equities should be found in favor of defendant for the reason that defendant has paid all but $28,591.16 of a $70,000 contract. Plaintiff has also received six percent on the $64,000 as amortized by the payments.

The contract will have been completed before the date of the original agreement by the reason of in-

creased payments as set forth in the supplemental agreement. The court is of the opinion that it would be inequitable to deprive defendant of her equity and work a forfeiture without a clear case of default under the contract, defendant having substantially performed the contract as she understood it.

"Equity does not favor forfeiture, and courts should greatly hesitate in enforcing one, especially when the contract has been carried out or its literal fulfillment has been prevented by oversight or uncontrollable circumstances.

"Although a forfeiture may be sustained in equity in some circumstances, equity should scrutinize the transaction to assure that all of the rights of party from whom forfeiture is sought have been respected."; Barroclough v. Atlantic Refining Company, 230 Pa. Superior Ct. 276, 326 A.2d 477.

The Rules of Civil Procedure applicable to actions of ejectment provide that a conditional verdict may be entered in an appropriate case: Rule 1056(b). It is apparent that plaintiff, by her brief, recognized the power of the court to provide for a conditional verdict.

In order that the parties shall be aware of their respective rights and duties under the contract, the court enters the following order:

## ORDER

And Now, December 6, 1974, it is hereby ordered:

(A) Defendant shall pay plaintiff the sum of $854.06 per month until her obligation to plaintiff is fully paid. The sum of $238, or the sum due on the mortgage of the Commonwealth Bank and Trust Company, to be deducted from the monthly payments and paid directly to the Commonwealth Bank and Trust Company until fully paid.

(b) Defendant shall pay all utility, insurance and repair bills within 60 days from the receipt of said bills.

(c) Defendant shall pay plaintiff, or into court, the sum of $2,265.05, the sum stipulated by the parties as the amount which would represent the difference between $854.06 per month and the amount actually paid up to and including August 13, 1974.

(d) Defendant shall pay the sum of $300 to plaintiff or into court, representing the check entered into evidence together with interest at six percent from the date thereof.

(e) Defendant shall hereafter pay all real estate taxes before the date they are returned to the Treasurer of Tioga County.

(f) Defendant to pay the costs of this proceeding.

(g) The motion to quash the writ of possession shall be granted and the amicable action of ejectment order stricken from the record upon order of court, pursuant to proof by defendant that the conditions as set forth in items (c), (d), (f), shall have been complied with, and all payments are paid to date; the conditions to be complied with within 30 days of this order.